Evans *vs.* Birge.

No. 37.—John P. Evans, plaintiff in error, *vs* John L. Birge, defendant in error.

[1.] A fact which has been directly tried, and decided by a Court of competent jurisdiction, cannot be contested again between the same parties or their privies in the same or any other Court. A judgment of a Court of Law, or a decree in Chancery, is an estoppel to the parties thereto and their privies, if it relates to the same subject-matter, and decides the question now in issue. But if that question came collaterally before the Court and was only incidentally considered, the judgment or decree is no estoppel. Whether the question now in issue was embraced in the judgment or decree, cannot be ascertained by inference, or by arguing from the judgment or decree.

[2.] *Quere:* Whether an estoppel by judgment or decree, should not in this State be specially pleaded?

Ejectment, in Bibb Superior Court. Tried before Judge Starke, July Term, 1851.

Evans *vs.* Birge.

This was an action of ejectment, brought by John P. Evans against John L. Birge, returnable to November Term, 1847, of Bibb Superior Court, for the recovery of several lots of land, near the City of Macon, constituting a part of what is known as the "Macon reserve;" among them, lots 74 and 79, the subject-matter really in dispute.

On the 16th day of December, 1848, Birge enjoined the action of ejectment by bill in Equity.

At the July Term, 1851, the action of ejectment and the bill were tried together. In the progress of the trial, Judge *Starke* dismissed the bill, on the ground that complainant had an adequate Common Law remedy.

Plaintiff in ejectment gave in evidence, the plot and grant from the State of Georgia to Samuel H. Fay, for said lots, and also a deed to himself.

The defendant in ejectment, then gave in evidence a bill in Equity, filed by the plaintiff in ejectment, in 1842, against one Alexander R. McLaughlin

This bill alleged that McLaughlin as the friend of complainant, in 1839 and 1840, advanced a large amount of money, in satisfaction of outstanding *fi. fas.* against complainant, took a transfer of said *fi. fas.* and also the notes of complainant; that said notes were renewed during the year 1840, at the end of every sixty days, at a large and usurious rate of interest; that the land known as the "Fay place" and belonging to complainant, was finally sold under and by virtue of said *fi. fas.* on the 6th day of July, 1841, when McLaughlin purchased the same at $3100. The bill alleged that complainant had paid off the principal and legal interest advanced on said *fi. fas.* by Mc-Laughlin, with property exclusive of the "Fay place."

By an amendment to his bill, complainant charged that the "Fay place," was again sold in January, 1842, under a mortgage *fi. fa.* in favor of Samuel H. Fay, against complainant. At this sale J. J. Gresham, Esq. became the purchaser, as the attorney of the plaintiff in *fi. fa.* with the understanding that he was to convey the same to McLaughlin.

To the bill McLaughlin filed his answer, which together with the

verdict of the Jury, and the decree of the Court on said bill and answer, was read to the Jury, which was as follows:    " We the Jury find and decree that the defendant, Alexander R. McLaughlin, deliver up to the complainant all the notes he now holds against the complainant, John P. Evans, and we decree that all the executions mentioned in the bill, and which are held by McLaughlin, be entered satisfied; that the defendant McLaughlin pay $348, on the elder *fi. fas.* now claiming the money in the Sheriff's hands, and find for the complainant Evans, $29 77 cts. with the cost of suit to be paid by the defendant."

Plaintiff in ejectment then offered in evidence, a file of the " Macon Messenger," a paper published in the City of Macon, for the purpose of showing the illegality of the sale of lots 74 and 79, under the mortgage *fi. fa.* in favor of Fay, the same not having been advertised according to law.

Counsel for defendant objected to the evidence.

The Court sustained the objection, and repelled the evidence, on the ground " that the legal title to said land was out of Evans; that his admission in his original and amended bill against McLaughlin, and the answer of McLaughlin thereto, and the judgment of the Court upon the demurrer of John J. Gresham to said original and amended bill, and the verdict of the Jury, and the decree of the Court, on said original and amended bill, together with the *fi. fas.* showed the title out of Evans, and worked an estoppel against him, as to all of said land."

To which ruling of the Court, counsel for plaintiff in ejectment excepted.

Cole and Stubbs & Lester, for plaintiff in error.

Rutherford, Bailey & Hines, for defendant.

*By the Court.*—Nisbet, J. delivering the opinion.

[1.] The question made for our consideration in this case is single, but rather difficult to come at.    The plaintiff below had given in evidence certain deeds for the land in question, known

as the *Fay Place*, amounting to some seven hundred acres, and composed of a number of fractional lots on the east branch of the Ocmulgee. The defendant, it seems, had filed a bill to aid his defence in the ejectment, to which the *plaintiff*, *Evans*, had answered, and which bill by consent was also on trial. The pleadings in that bill had been read to the Jury. The defendant below had also read in evidence a bill, some years ago filed by the plaintiff *Evans*, against one *A. R. McLaughlin* and one *John J. Gresham*, together with *McLaughlin's* answer thereto, a demurrer to the same filed by *Gresham* with the judgment of the Court sustaining the demurrer, and the verdict and decree rendered in the case. At this stage of the trial, the plaintiff in ejectment, *Evans*, tendered in evidence a file of the *Macon Messenger* newspaper, for the purpose of proving that a sale of the land in question under a mortgage *fi. fa.* in favor of *Fay*, and under which sale, (but not under that alone) the defendant *Birge* claimed title, was illegal, because not advertised according to law. This evidence was objected to, on the ground that the bill filed by *Evans* against *McLaughlin and Gresham*, with *McLaughlin's* answer, the demurrer to said bill filed by *Gresham*, and the judgment on that demurrer, and the verdict of the Jury, and the decree of the Court thereon, showed title out of him, *Evans*, and he was thereby estopped. The Court repelled the evidence, on the grounds taken in the objection; that is, the Court held that the record of the bill filed by *Evans* against *McLaughlin and Gresham*, showed title out of the plaintiff, *Evans*, and he was thereby estopped from asserting title to the lands. To this decision the counsel for plaintiff, *Evans*, excepted, and there submitted to a verdict. The question therefore is this, was *Evans* estopped by the proceedings had on the bill filed against *McLaughlin and Gresham*. To determine it intelligibly, a full statement of what that record contains and what judgments were rendered therein, and of the relation which these parties sustain to the parties in that cause, seems to be indispensable. Omitting a voluminous mass of irrelevant matter, it seems that *Evans* was the owner of this *Fay* tract of land, having bought it of *Mr. Howard Fay* and executed to him a mortgage for the purchase money,

a part of the purchase money for which, say $5,000, was unpaid; that he became otherwise deeply involved, and judgments to a large amount were procured against him in favor of a *Mrs. Johnston* and divers others. Being pressed for the payment of the executions issued on these judgments, he applied to *McLaughlin* for aid, who bought the judgments, and took control of the executions, and at the same time took the notes of *Evans*, for the sums advanced by him, as collateral security, with interest, varying from the rate of forty-eight to sixty *per centum*. These notes were renewed at these rates, from time to time; and during which time, *Evans* sold to him a large amount of property, consisting of Town lots, negroes, &c. at stipulated prices (all of which is specially stated in the bill) in payment of the money thus loaned to him (*Evans*.) *McLaughlin* becoming dissatisfied with the condition of things, in 1841, caused the *Fay plantation* to be levied on by the *Johnston* and other *fi. fas.* against *Evans*, which he had bought, and it was advertised for sale, subject to the *Fay* mortgage, in July 1841. *Evans* threatening to interpose some obstacles to the sale, he and *McLaughlin* agreed that *McLaughlin* should buy the land, and give *Evans* all the benefit of a cash sale of it, which he (*Evans*) might be able to effect within twelve months, after paying to him, *McLaughlin*, the principal and legal interest of his advances, with attorney's fees. *Evans*, in his bill, insists that he was also to have possession for twelve months, which *McLaughlin* denies, but says he was only to be permitted to gather his crop. Difficulties arising between them about the possession, *Evans* attorned to *McLaughlin*. *McLaughlin* bid off the land at the sale for $3100, and took a deed from the Sheriff, but paid no money, *Evans* remaining in possession. As to this agreement, *Evans* charges its violation by *McLaughlin*, he having caused the lands again to be levied on, by one or more of the executions which he had bought and which he had transferred to one *Moses Baldwin*, and in seeking to turn him out of his possession. *McLaughlin* in his answer, denies that he got a title to the lands by this purchase, inasmuch as he did not pay the bid of $3100, and never got possession, and insists that he should not be held to account to *Evans* for

that sum. An interlude in this litigious drama is this: After the sale of the lands, as stated to *McLaughlin*, they were levied on and sold as his property, under an execution against him, and were bought by one *Thomas Brown*, who sold to the defendant, *Birge;* and here let it be noticed that though *Brown*, who bought the land at Sheriff's sale, under execution against *McLaughlin*, *Birge* claims to be in 'privity with *McLaughlin*, and by reason of that privity, also claims the benefit of estoppel against *Evans*. But more of this hereafter. Afterwards, still the *Fay mortgage* being foreclosed, these lands were brought to sale under the mortgage *fi. fa.* *Mr. Gresham*, who was the attorney, for the mortgagees, bought them for $5,000, and took the Sheriff's deed in his name, coming into an agreement with *McLaughlin* that he should have the land, upon his paying the purchase money. It appears that one of the lots of land embraced in the *Fay Place*, *No.* 79, I believe, was not named in the *rule nisi* for foreclosure, and in *No.* 74, I believe, was not specified in the rule absolute, or in the mortgage *fi. fa.* or in the Sheriff's deed to *Gresham*. *Gresham* sold to one *Armstrong*, he to *Thomas Brown*, and he as before stated, to the defendant *Birge*. *Gresham* was made a party to *Evans*, bill, and that bill avers the illegality of the mortgage sale. *Gresham* demurred to the bill, and the demurrer as to him was sustained, upon the *grounds that the Sheriff was legally authorized to sell under the mortgage fi. fa. and that the complainant, Evans, had not tendered to him the amount of the purchase money.* Possession of the premises being demanded, under the mortgage sale, this same bill was filed to enjoin it, in which the transactions already detailed are charged; in which, farther, the complainant *Evans* claims that his transactions with *McLaughlin*, be purged of all usury; that he come to a fair accounting; that he, *Evans*, has paid him more than the amount of the principal and legal interest of the money borrowed from him; that his notes to *McLaughlin* be delivered up and cancelled, and the executions against him bought by *McLaughlin* be decreed to be satisfied. In his answer, *McLaughlin* denies that he has been paid his principal and legal interest; controverts the statements in the bill as to the prices at which the property transferred to him by

*Evans* was to be taken ; insists that that property should be charged against him at its actual value, and exhibits a balance of principal and lawful interest against *Evans* of some $4,000. Upon the trial, the Jury decreed as follows :  "We the Jury find and decree, that the defendant, *Alexander R. McLaughlin*, deliver up to the complainant all the notes he now holds against the complainant, *John P. Evans*, and we decree that all the executions mentioned in the bill, and which are held by *McLaughlin*, be entered satisfied ; that the defendant, *McLaughlin*, pay $348, on the older *fi. fas.* now claiming the money in the Sheriff's hands, and find for the complainant, *Evans*, $29 77 cents, with the costs of suit to be paid by the defendant."

The decree of the Court was entered up in pursuance of the verdict.

The decision of the Court is founded on the *admission* of *Evans* in these pleadings, and *judgments* of the Court rendered on *Mr. Gresham's* demurrer, and the *final decree* rendered in the cause. From all these, he says it is manifest, that title to the lands is shown out of *Evans*, and therefore he is estopped. It is a judgment, that in Law he is estopped from asserting a claim to them, against the defendant, *Birge*. As to any admissions which the recitals in the bill contain, without referring to them in the way of specification, I remark that they are not an estoppel. As evidence against his title, they might go to the Jury for what they are worth. I do not think that there is any admission against his claim upon the lands, which, *per se*, constitutes an estoppel. In *Lampen vs. Corke, Holroyd, J.* says that estoppels are odious in the Law, (7 *Eng. S. L. R.* 209.) It is often so said, and truly said of estoppels, by recitals in deeds, admissions in pleadings, and all of that class. They are not to be readily allowed. Estoppels by *judgment* are, however, not odious. They are to be received with as much favor as any other defence, because it is the interest of the Commonwealth that litigation should cease. The Court clearly erred, if he is to be understood as holding that the admissions of *Evans* were in Law an estoppel. I am inclined to believe that he did not so hold, but that he referred to

the admissions, as inducement to the judgments in the cause, and that his opinion was founded on *them*.

[2.] It was insisted in the argument, that the estoppel ought to have been pleaded.   Whether it ought or not, was not a point brought distinctly before the Court, and if we thought with counsel for the plaintiff in error, it would not be right to send the cause back upon a question not decided below.  I will only say for myself, that although an estoppel by a previous judgment may be given in evidence under the general issue in England, and have the effect under the direction of the Court of a plea in bar, yet I am satisfied that it is more according to our Judiciary Act, and in harmony with our system, to plead it.

It is very well settled, that a fact which has been directly tried and decided by a Court of competent jurisdiction, cannot be contested again between the same parties or their privies, in the same or any other Court.   A judgment therefore of a Court of Law or a decree in Chancery, is an estoppel to the parties thereto, and to those who are in privity with them.   This is the rule. It is, however, carefully and strongly fenced.  The judgment must relate to the same question, and must clearly decide it.  If it came collaterally under consideration, or was only incidentally considered, there is no estoppel.   And if the decision of the question is ascertained inferentially, by arguing from the judgment or decree and the pleadings in the case, there is equally no estoppel.   Laying down the rule, with the modifications stated, I subject this case to its test.   (6 *Wheat. R.* 109. 1 *Story's Rep.* 474.   4 *Howard, U. S. R.* 497, 498.)

There were two judgments in the cause, to wit:  the final decree and the decision upon *Mr. Gresham's* demurrer.  The bill, among other things, assailed the sale of the lands, under *Mr. Fay's mortgage*, upon the ground (which I did not before state) that the Sheriff had agreed with the defendant in execution, *Evans*, that he would sell them in parcels, but did in fact sell the whole together.   The consequence was, as the bill charges, that it did not bring more than half its value.   *Gresham*, as stated before, bought the land, and was made a party to the bill and demurred to it.   The Court ruled that the demurrer be sustained upon two

grounds: *First.* Because there was no tender of the purchase money; and, *Second, because the Sheriff was legally authorized to sell the land in the way he did sell it.* This was a judgment in favor of the validity of the sale, and of course in favor of *Gresham's* title. The bill does not controvert the mortgage debt, or the mortgage judgment and execution at all; it only controverts the sale. The land being sold under a valid judgment, as the property of *Evans,* and bought by *Gresham,* and the sale. after being attacked in the bill, being sustained by the Court in so many words, it is a judgment in favor of *Gresham's* title, and it of course divests *Evans'* title. It is a judgment upon the title of lands, in dispute between *Evans* and *Gresham,* rendered by a Court having competent jurisdiction. The same lands being now in controversy, that judgment does estop the plaintiff in ejectment, *Evans,* from asserting a title to them against *Gresham,* and those who claiming under, are in privity with him. These things being so, the inquiry is, does *Birge,* the defendant in this ejectment, claim title under *Gresham*—is he his privy? He is, as to all the lots of land making up the *Fay Place,* except one, to wit: *No. 74. Gresham* conveyed to *Armstrong* all except that lot. *Armstrong* to *Brown,* and *Brown* to *Birge. Birge* therefore acquired no title from *Gresham* to that lot, and so far as *that* is concerned, is not in privity with him. *Evans* states, it is true, that the whole of the *Fay Place,* including thereby lot No. 74, was sold at the mortgage sale, and it is true that the judgment on the demurrer confirmed the sale; yet inasmuch as no title passed from *Gresham,* for lot 74, *Birge* cannot claim under him, and as to that, is not in privity with him. He therefore, as to that lot, is not entitled to a judgment of estoppel against *Evans.* It is argued that he is in privity with *McLaughlin,* and that *Evans* being estopped as to him, he is also estopped as to *Birge.* The privity is made out thus: *McLaughlin* bought the lands at Sheriff's sale, and it was afterwards sold under execution against him, as his property, and *Brown* became the purchaser, and *Birge* bought of *Brown.* It will be recollected that *McLaughlin* bought under an agreement with *Evans,* that he *Evans,* should be allowed to sell the land for cash, within twelve months, and have the benefit

of what it brought over the principal and legal interest, which he owed to *McLaughlin*, with attorney's fees. *Evans* charges the facts of the sale in his bill—charges that *McLaughlin* bid off the land at $3100, got a deed, and had not paid the purchase money. He clearly calls upon *McLaughlin* to account for that sum. On the other hand, *McLaughlin* answers that he did bid off the land, did get the Sheriff's deed, but did not get possession, and did not pay the bid of $3100, and claims, that he should not be held to account to *Evans* for that sum. Whether the sale to *McLaughlin* was a valid sale or not, was a question for the Jury to determine, in making up the account between *Evans* and *McLaughlin*. By the plaintiff in error, it is argued that they did not in the verdict which was rendered, embrace this item of $3100; that the verdict is made up of items independent of that that the charges in the bill of payments made to *McLaughlin*,; justified the verdict, irrespective of any consideration of this sale ; in short, that the verdict settled the accounts between these parties, growing out of the loan and the payments, and did neither affirm or disaffirm *McLaughlin's* purchase. The conclusion is that there is no judgment of the Court founded on their verdict, which affirmed that sale, and therefore no judgment which divested the title of *Evans* in the lands, and vested it in *McLaughlin* ; and if so, the decree does not estop *Evans* as to *McLaughlin*, and of course does not estop him as to *Birge*. The other side insist that the Jury must have embraced the purchase money in their verdict, and thereby divested *Evans'* title, and if it did, he, *Evans*, is estopped as to *McLaughlin*, and as to *Birge*, who claims under *McLaughlin*. It is now apparent that the question is reduced to this, to wit; did the verdict of the Jury, and the decree of the Court thereon charge *McLaughlin* with his bid of $3100? If it did, it was done upon an affirmation of his title to the lands, including lot 74, which he bid off at Sheriff's sale, and *Evans* is estopped by that decree. This was really the question made in the argument; neither the verdict nor the decree, in terms declare of what items the credits allowed *Evans* against *McLaughlin* were constituted. They are silent about this sale ; this being so, we are left to inference, and the rule is

that an estoppel by judgment cannot be made out inferentially. If indeed, as might be the case, the inference was a necessary conclusion in law, from the issues made by the pleadings, it is not true, that a judgment may not be made an estoppel inferentially.    But when the inquiry is whether the fact in question, as here, whether the Jury did charge *McLaughlin* with the $3100, is covered and concluded by the verdict, it cannot be granted inferentially.    The estoppel cannot be made out, in the language of the Supreme Court of the United States, by *arguing from the judgment.*    In making up his account against *McLaughlin, Evans* does not charge him with the $3100 *specifically,* although in the charging part of his bill, he claims it as justly due him. In that account he charges him *with payments,* and states a balance against h m. .  *McLaughlin* exhibits his account against *Evans,* and claims a large balance.    What proofs were before the Jury does not appear.    They found a small balance against *McLaughlin,* and decreed that the executions be entered satisfied, and that the notes be delivered up.    Without saying more, it is very plain that; we do not know whether they embraced this item in their verdict or not; they may have done so—I think most probably did.   The record does not show that they did.   We cannot say that there was a judgment on the sale, and on the title, therefore, to the lands ; we cannot say that there is an estoppel by judgment.    Our judgment is, that this bill and answer, the admissions therein of the parties, and the judgments and decrees thereon, do not estop the plaintiff below as to the land not embraced in *Mr. Gresham's* deed.    The exclusion of the evidence, therefore, on the ground of estoppel, we hold to have been erroneous.

Let the judgment be reversed.