## THORNTON *v.* PERRY.

1. Entries appropriately made upon the dockets of the superior courts during the pendency of causes, by the judges presiding therein, are presumed to represent truthfully the incidents occurring in the course of litigation; and so long as such entries stand unchallenged by direct proceeding to vacate or reform them, they are not open to collateral explanation or attack.

2. An entry made by the judge of the superior court in a given civil case, in the following words: "By consent ordered to stand without proceeding for five years time, and then to go to judgment," is unambiguous in its terms, and signifies that upon consent of the parties the judge has continued the cause stated for a term of five years, at the expiration of which the plaintiff is to have judgment for his demand.

3. The effect of such an order was to cut off all defenses existing at the time the entry was made, and there having been no direct attack upon the entry, or any attempt directly to modify or reform it, the court did not err in striking pleas setting up such matters of defense, even though in such pleas the defendant alleged that at the time the entry was made he did not understand it to mean that he would be precluded from making the defenses now sought to be set up.

Argued June 1, — Decided July 8, 1897.

Complaint.    Before Judge Sheffield.    Terrell superior court. November term, 1896.

On May 7, 1888, J. B. Perry sued J. B. Thornton upon a promissory note for $7,989.79 principal, with interest at eight per cent., and ten per cent. attorney's fees, dated December 31, 1886, and due one day after date.    The case was called for trial at the November term, 1896, and upon the bench-docket opposite the entry of the case appeared the following in the handwriting of Hon. John T. Clarke, then the presiding judge of the court: "May term, '89.  By consent ordered to stand without proceeding for five years time, and then to go to judgment."  Upon motion of plaintiff, the court thereupon ordered that all portions of the defendant's pleas relating to the facts that existed prior to the agreement entered on the docket be stricken, and that only such portions of the pleas be allowed to stand as referred to payments made upon the debt; and refused to receive testimony in support of the stricken portions of the pleas.    The payments having been agreed upon, the plaintiff was allowed to take a verdict for the balance apparently due upon the note.    Defendant assigns error upon these rulings.

The pleas so stricken make, in brief, the following allegations: The matters of defense now set up have arisen and come to defendant's knowledge since the date of entry on the docket, and the consent therein was never understood or intended to preclude defendant from setting up any matters of defense that might exist at the expiration of the five years, but the same was understood and intended to mean that the plaintiff should have judgment for such amount as might appear to be due him, ascertained by a regular trial, after allowing for all payments of every description and all matters of failure of consid-

39

eration, and any and all other matters that might or could be set up by defendant and sustained by evidence. When the note was given, plaintiff gave defendant a bond for titles for certain places known as the Lee & Fulton place, the LeRoy Brown place and the Enoch Brown place; but this was only a part of the transaction. Defendant had previously bought said lands from plaintiff, taking his bonds for title for each body or tract as the same was respectively purchased, going into possession thereunder and so continuing. The purchase price of the lands aggregated $12,100, and the payment made by defendant to plaintiff on the purchase-money aggregated $11,375, so that all of the purchase-money has been paid off except $725 with such interest as might legally have accrued. After most of the purchase-money had been paid and defendant was arranging to close up the matter by paying the money and taking titles to the lands in pursuance of the terms of the bond, plaintiff stated to defendant that he was not then in condition to make titles to the land, and urged defendant to give up the three bonds and take one bond covering all three of the places and give a note for the balance of the purchase-money then due; arguing that it would be best to reduce the matter to this form, as he could not then make titles, and by putting the matter into the proposed shape it could stand over until plaintiff should get into condition to make titles. Defendant much preferred to conclude the matter and get titles, and so stated to plaintiff; but thinking he could do no better, he gave up the three bonds on plaintiff's promise to make and deliver to him a new bond covering the three places, the amount of which should be in double the amount of the purchase-money, just as the old bonds were written. When defendant called to get the new bond and to sign the new note, it was quite dark, and having confidence in plaintiff, he signed the new note and took the new bond just as the papers were made out and presented by plaintiff. Being in a hurry to get home, defendant did not examine the papers, acting on the confidence which plaintiff has grossly abused. Within the next day or two he examined said bond and found to his surprise that, instead of being in double the amount of the pur-

chase-money, it was for only $8,000. He went at once and complained of this to plaintiff, who replied that it was an oversight, and that he was then pressed for time, but would correct the mistake. When defendant again approached him in relation to the matter, he said it was all right anyhow, or words to that effect, and never did correct it. He further stated, in substance, that it would make no difference, that the matter could stand just as it was until he got ready to make titles and then he would make good titles. Defendant was surprised when, shortly thereafter, he found that plaintiff had sued him on the new note. He stated to defendant that the reason for bringing suit was to keep it from going out of date, or something to that effect. He then proposed that the case should stand on the docket for five years and defendant pay the interest, or as much as he might choose to pay in the meantime, and that at the end of that time the case should go to judgment for whatever might be due, and by that time he would be in a condition to make titles. It was upon this basis that the entry was made on the docket. It was never intended or understood that the entry should estop defendant from setting up any legal defense to the note. He went forward in good faith making payments so as to extinguish whatever might be due on the purchase-money before or by the time indicated by plaintiff for him to be in condition to make titles. Defendant made on the new note six payments at different times, aggregating $5,323, all of which were entered on the note, except one or two of the amounts for which he has plaintiff's receipts. After making the last of these payments he found out the difficulty in the way of plaintiff's making title to the Enoch Brown place, which is larger than both the other tracts in question, and the purchase price whereof was $6,000. Plaintiff has never been and is not now able to make titles to said plantation, for the reason that he has no titles. The title to the lands is in the children and heirs of C. C. Brown. Plaintiff claims the land under one Hollis who claimed to hold under C. C. Brown, who made no title to Hollis or any one else, nor was he ever paid for the land. Plaintiff has admitted that the title was in the Brown heirs, but insisted that this

fact should not prevent his collecting the purchase-money from defendant, saying that his bond is good. The bond being for only $8,000 will not more than cover the other lands, and affords no remedy as to the Brown place. Besides, defendant should not be driven to a circuity of actions, but should be permitted to set up this defense in said case. Plaintiff claims that he has the land by prescription and that he has bought up the titles of the Brown children, which defendant denies and shows that some of said children are still minors, and none have been of age long enough to be affected by prescription. These children are in fact standing by and watching this litigation and determined to assert their rights. When defendant found out this want of power to make title he ceased to make payments. Further, when plaintiff was negotiating to sell the Enoch Brown place to defendant, he represented that it contained 2,500 or 2,600 acres and wrote the first bond for titles for 2,500 acres of land. The renewal bond calls for only 2,000 acres as contained in the tract, which in fact is the quantity therein contained. Defendant bought the plantation relying on plaintiff's representations as to there being 2,500 acres at $2.40 per acre, aggregating $6,000. Plaintiff, hoping to escape liability for the fraud thus perpetrated on defendant, resorted to the expedient of making a new bond. Another motive was to escape liability for the defects of his title; and still another was to cover up and secure a large amount of usurious interest, which goes in large part to make up the amount of the new note. Plaintiff charged interest on the balance of the purchase at twelve per cent. per annum. The plea then sets forth a statement in detail, showing the total amount of usury to be $1,562, which defendant claims should be deducted from the note. Taking therefrom this amount, together with the amount of the deficit of the land in the Enoch Brown place and the sum of payments made by defendant, it appears that $8,087 should be deducted from the amount of the note sued on. This would leave but little due on the note, even if plaintiff had titles to the Enoch Brown place, for if the note has drawn interest the amounts that should be deducted likewise draw interest. Inasmuch as plaintiff has no title to that place, the recovery

should be in defendant's favor for the amounts paid on account of said place, with interest. When, in 1892 or 1893, defendant found said want of title in plaintiff, he ceased to make any further payments and went to plaintiff and stated the facts, and in order to avoid litigation proposed to give up the Enoch Brown place if plaintiff would account for the money defendant had paid thereon. Plaintiff refused to do this, and notified defendant that he intended to press the case for judgment at the May term, 1893. Defendant filed his pleas and with his counsel was ready at said term for trial, but plaintiff was not ready, his counsel alleging that the declaration was lost, and finally saying that the case would stand until the five years should expire. Defendant stands ready to try the case, and if there is anything due plaintiff after a fair and just accounting and settlement of the matters herein stated, he is ready and offers to pay the same. All he wants is to be allowed the benefit of all payments that have been made and to get a good and perfect title to the land, and then he is ready to pay the amount of the principal, with interest, if any is due.

Upon the back of the note as sued upon appears the following statement:

| | |
|---|---|
| Bal. $1,000 note dated Nov. 20th, 1877 | $ 395.00 |
| Drawing 12 per cent. interest dated Nov. 20th,'78 | 372.80 |
| Balance $1,216.71 note dated April 1st, 1885 | 1,016.71 |
| Drawing 8 per cent. int. due Jan. 1st, '86 | 81.28 |
| Note dated April 1st, due Jan. 1st, '86 | 2,800.00 |
| 8 per cent. int. | 224.00 |
| Note dated April 1st, due Jan. 1st, '87 | 3,100.00 |
| | $7,989.79 |

*Wooten & Wooten*, for plaintiff in error.
*J. H. Guerry* and *J. A. Laing*, contra.

ATKINSON, J. 1. In determining the questions made in the present case, it is only necessary to consider the effect of the entry which appears upon the judge's docket, and which is set out in the record. This entry was in the handwriting of the judge of the judicial circuit which embraced the county in which this case was pending at the time it was made. No di-

rect attack was made upon it; and being unchallenged by any direct proceeding to vacate or modify its terms, it is presumed to speak truthfully concerning the matters of fact to which it relates.  The superior court is a court of record, and this court, in speaking of such entries as the one now under review, in the case of *Armstrong* v. *Lewis*, 61 *Ga.* 680, laid down the rule to be: "The dockets, minutes and records of a court of record must be kept so as to represent the true state of its business. From them the court, without the aid of a jury, must be able to ascertain what cases are pending, and what are not pending. If they fail to speak the truth in respect to the pendency or the disposition of any case, the court, in a direct proceeding for that purpose, may, on sufficient evidence aliunde, have them corrected; but they can not be attacked collaterally for alleged errors or deficiencies."  The doctrine of that case rules that entries of the character now under review are not subject to collateral attack.  The principle of that case was applied by the ruling of this court in the case of *Brady* v. *Little*, 21 *Ga.* 132, and was reaffirmed and again applied in the case of *Saffold* v. *Banks*, 69 *Ga.* 289.  There having been no direct attack upon this entry, it speaks for itself, and is not subject to explanation or modification by means of extrinsic evidence.

2, 3. The meaning of this order is clear and unambiguous. It is a simple statement by the presiding judge, that, the parties consenting, the case should stand continued for a period of five years, and then go to judgment.  The words, "and then to go to judgment," could have but one significance.  They imply that at the expiration of the time for which the case should stand continued, the plaintiff should have judgment for his demand.  The effect of this order was to cut off all defenses existing at the time the entry was made.  Unless this be true, the words, "and then to go to judgment," could have no significance, and the order would simply amount to a general continuance of the case, without any apparent reason, for a term of five years; and this would have been a most remarkable, if not unheard of, proceeding in the course of judicial trials.

The court gave to the defendant the benefit of all defenses

which arose since the passing of this order; and there having been no direct attack upon the entry, or any attempt directly to modify or reform it, there was no error in striking the pleas setting up matters of defense existing before the making of the entry, nor in excluding evidence in support of such pleas, even though the defendant alleged in such pleas that he did not understand at the time the entry was made that such was, or would be, considered its legal effect. There was, therefore, no error in overruling the defendant's motion for a new trial.

*Judgment affirmed. All the Justices concurring.*