# CASES

### DECIDED IN THE

# SUPREME COURT OF GEORGIA

#### AT THE

## OCTOBER TERM, 1904.

### SUMNER *v.* SUMNER.

1. In order for exceptions pendente lite to be passed upon by the Supreme Court, error must be distinctly assigned thereon either in the bill of exceptions or at the hearing of the case in that court.
2. "The denial, in vacation, of a motion to dismiss a motion for a new trial is cause for a separate and independent writ of error; and if none is sued out and no exceptions are entered pendente lite, it is too late, after the expiration of thirty days from the date of the decision, to bring the question to this court."
3. A contract between husband and wife, made with the intention of promoting a dissolution of the marriage relation, is contrary to public policy and void; but a contract providing for the wife's maintenance, made after a separation has taken place, or immediately before a separation which has already been determined upon, is valid and enforceable.
4. Gross inadequacy of consideration in a contract, when coupled with other circumstances indicative of fraud, will authorize the setting aside of the contract. But the mere fact that under a contract executed by a husband in satisfaction of his wife's claim for alimony she received property the value of which was small when compared with that of his entire property, and less than she might have been legally entitled to, though sufficiently valuable to provide a support for her, will not be sufficient to establish the existence of fraud.
5. A contract of the nature above indicated will not, at the instance of the wife, be set aside, when no fraud was used by the husband to induce her to accept it, or to prevent her from acquainting herself with its terms, or from ascertaining her legal rights in the premises.
6. The defense of res adjudicata can not be taken advantage of unless specially pleaded.
7. Where the question whether a contract between a husband and wife who have separated, made for the purpose of providing a support for her, is void for fraud depends upon a question of fact, or upon questions of law and fact, the finding of the trial judge, on the hearing of an application for tem-

1

porary alimony, that the contract is void, is not res adjudicata at the trial of the suit for permanent alimony. It would be otherwise if the decision had been based upon a question of law unmixed with any question of fact.

Argued June 22, — Decided October 15, 1904.

Alimony.     Before Judge Spence.     Worth superior court. January 4, 1904.

J. L. Sumner and his wife, Mrs. S. J. Sumner, separated in December, 1900.     Negotiations were begun between them, looking to a settlement of the wife's claim for alimony.     On December 8, 1900, both parties signed an agreement to live thenceforth separate and apart from each other, and J. L. Sumner executed a paper in which he agreed to make to his wife "a deed of conveyance" to described land, and to give her certain personal property. On December 14, Sumner executed a deed, "in consideration of natural love and affection," conveying to his wife a life-interest in described land.     He afterwards delivered to her certain personalty.     The deed seems not to have been delivered to Mrs. Sumner until some time in the early part of the ensuing year. In January, 1901, Mrs. Sumner filed a petition asking for a judgment against her husband for temporary and permanent alimony. This petition was subsequently dismissed by the plaintiff.     In April, 1902, Sumner brought suit against his wife for a divorce. She answered, denying his right to a divorce, and, by answer in the nature of a cross-bill, prayed that temporary and permanent alimony be granted her.     She amended this answer by alleging, that the deed executed by her husband was void for fraud; that he had failed to comply with his agreement of settlement; that she had never accepted the deed; and that she "hereby returns to J. L. Sumner any benefits he [she] may have received under said contract."     Sumner answered the cross-petition, averring that the settlement deed was valid and binding, and that Mrs. Sumner accepted it, together with certain personal property, in satisfaction of her claim for alimony against him.     Upon the hearing the judge allowed Mrs. Sumner certain sums by way of temporary alimony and attorney's fees; the order reciting that, "after hearing the evidence and argument, it is ordered and considered and adjudged that no valid settlement, accord, or adjudication has been made between plaintiff and defendant as to the right of S. J. Sumner to alimony, temporary or permanent, or support or other

interest in property and estate of J. L. Sumner." Sumner excepted to this order, but his counsel having inadvertently failed to sign the bill of exceptions, the writ of error was dismissed in the Supreme Court. 116 *Ga.* 798. Subsequently Sumner filed a petition in the superior court, reciting the fate of his writ of error, and other facts, and praying for a revision of the order granting Mrs. Sumner temporary alimony. This petition was denied, and, on exception in the Supreme Court, the judgment of the trial judge, was affirmed. 118 *Ga.* 408. Thereafter the application for permanent alimony came on for trial before a jury, and resulted in a verdict for the applicant in the sum of $15,000. Sumner made a motion for a new trial, containing several grounds. At the hearing of this motion Mrs. Sumner moved, on specified grounds, to dismiss it. The court overruled the motion to dismiss, and then overruled the motion for a new trial. While the jury were considering the case, the court, over objection of Sumner's counsel, heard and granted a motion of Mrs. Sumner to allow her an additional sum for attorney's fees. To the granting of this motion Sumner excepted pendente lite. Each of the parties sued out a writ of error to this court. In Sumner's bill of exceptions error is assigned upon the judgment overruling his motion for a new trial. In that bill of exceptions the facts relating to the allowance of additional attorney's fees and the filing of exceptions pendente lite are recited, but no assignment of error thereon is made; nor was error assigned in this court after the case reached here. Mrs. Sumner's bill of exceptions assigns error upon the order overruling her motion to dismiss the motion for a new trial. This bill of exceptions is denominated by the plaintiff in error therein a "cross-bill." The other material facts appear in the opinion.

*Jesse W. Walters, J. J. Forehand,* and *Frank Park,* for J. L. Sumner. *Samuel S. Bennet* and *Claude Payton,* contra.

FISH, P. J. (After stating the foregoing facts.) 1. The order allowing additional attorney's fees can not be reviewed, because no sufficient assignment of error has been made thereon. Sumner's bill of exceptions contains merely a recital that such an order was passed and that exceptions pendente lite thereto were filed, but does not assign error either on the order or the exceptions pendente lite. Nor was any assignment of error filed in this

court after the case reached here, as might have been done. *Hardee* v. *Griner*, 80 *Ga.* 559. Under such circumstances, the exceptions pendente lite can not be considered. *Branham* v. *State*, 96 *Ga.* 307.

2. A motion was made to dismiss the bill of exceptions of Mrs. Sumner, because it was sued out more than thirty days after the ruling complained of. The term at which the case was tried adjourned on November 7, 1903. The motion for a new trial and the motion to dismiss it were overruled on January 4, 1904, in vacation. Mrs. Sumner's bill of exceptions, assigning error upon the overruling of the motion to dismiss, was certified on February 12, 1904. This bill of exceptions is denominated by the plaintiff in error therein a "cross-bill," but it assigns error upon a judgment which is subject-matter for an independent or main bill of exceptions. So treated, it should have been sued out within thirty days after the judgment complained of was rendered. This conclusion inevitably results from the decision in *Pergason* v. *Etcherson*, 91 *Ga.* 785, where it was ruled : "The denial, in vacation, of a motion to dismiss a motion for a new trial is cause for a separate and independent writ of error; and if none is sued out and no exceptions are entered pendente lite, it is too late, after the expiration of thirty days from the date of the decision, to bring the question to this court." Counsel for Mrs. Sumner insist that this decision is unsound, and ask leave to review it. We think, however, that the ruling is correct, and we therefore decline to overrule it. If the decision had been rendered as claimed by Mrs. Sumner, it would have been a final disposition of the case, and, under the express terms of the statute, exception could have been taken by means of an independent bill. Civil Code, § 5526. It is also insisted that the decision cited is in conflict with the earlier ruling in *Harris* v. *Central Railroad*, 78 *Ga.* 525, wherein it was held that a defendant could by cross-bill of exceptions complain of the allowance of an amendment more than sixty days before the cross-bill was presented to the judge, the cross-bill having been tendered and certified at or near the time when the main bill was certified. There is a very clear distinction between the two cases. The allowance of an amendment is not a final judgment, nor would a judgment disallowing it be final. Hence, if the party complaining of the allowance of the

amendment is successful in obtaining a final judgment in the case, he can complain of the ruling against him only by a cross-bill, and he can not sue out a cross-bill until a main bill is tendered by the adverse party and certified by the judge. The motion to dismiss Mrs. Sumner's bill of exceptions must be sustained.

3. The mere fact that the deed from Sumner to his wife was executed pursuant to a separation, and to provide a separate maintenance for the wife, did not render it invalid. "A contract between husband and wife, made with the intention of promoting a dissolution of the marriage relation," is contrary to public policy and void. *Birch* v. *Anthony*, 109 *Ga.* 349. But a contract providing for the wife's maintenance, made after a separation has taken place, or immediately before a separation which has already been determined upon, is valid and enforceable. *Chapman* v. *Gray*, 8 *Ga.* 341; *McLaren* v. *McLaren*, 33 *Ga. Supp.* 99; 1 Bish. Mar. Div. & Sep. § 1278; Fox *v.* Davis, 113 Mass. 255; Randall *v.* Randall, 37 Mich. 563; Gaines *v.* Poor, 60 Ky. 503; Hutton *v.* Hutton, 3 Pa. St. 100. Formerly the practice was to make such settlements through the medium of trustees. There are authorities, however, that a trustee was not necessary even at common law. See citations in 3 Pa. St. 104. But be this as it may, no trustee has been necessary in this State since the passage of the married woman's act of 1866. An agreement between husband and wife to live separate and apart is illegal; and if a conveyance to the wife be founded upon such a consideration, it too will be void; but not if it be the result of a separation instead of being made to promote it.

4. The evidence was voluminous. Much of it was irrelevant and unnecessary. Mrs. Summer was about fifty-six years of age at the time of the separation, and had been married thirty-five or thirty-six years. It is inferable from the record that she was not a woman of great culture, but the evidence shows that she had ample intelligence to understand the nature and terms of the contract executed by her husband. Indeed she seems, during the negotiations leading up to the final contract, to have been fully alive to her interests and to have exhibited business ability and judgment. The fact that her husband afterwards brought a suit for divorce has no bearing upon the issues involved in the case, which relate solely to the question of alimony. The suit for

divorce could in no sense be construed as a repudiation of the settlement, nor could the husband have repudiated it. It had been fully executed prior to that time, and nothing he could do would have the effect of setting it aside. It was admitted that the real consideration of the deed was Mrs. Sumner's claim for alimony. Sumner's written agreement with reference to personalty was to give her certain live stock, a buggy, a wagon, and farm products. There seem also to have been verbal agreements as to other personalty. The evidence required a finding that all of these agreements were substantially complied with. She did not receive a hundred sheep which he agreed to give her, but she accepted $100 instead. She accepted and used all of this personal property and consumed some of the farm products. There was evidence of an offer to surrender to Sumner, before the trial, the personal property unconsumed and the land described in the deed. The agreement in reference to the land was to "make deed of conveyance" to certain land to Mrs. Sumner. The deed gave to her a life-estate only in some 690 acres of land, from 90 to 125 acres of which was, according to the testimony, cleared and in cultivation. Mrs. Sumner herself testified that had it been worked properly it would have afforded her a support. Her youngest child was twenty years old at the time of the trial, and amply able to support himself. It is therefore apparent that the consideration was not so inadequate as to raise a presumption of fraud. Gross inadequacy of consideration, joined with other circumstances, may give rise to a presumption of fraud, and be sufficient to set aside a contract or a sale. Civil Code, § 4033; *Hoyle* v. *Southern Saw Works*, 105 *Ga.* 123 (4); *Palmour* v. *Roper*, 119 *Ga.* 10 (5). Whether the inadequacy alone can ever be so gross as to justify such a presumption need not be decided. No such presumption could arise in this case from the value of the property which Mrs. Sumner received. It was small compared with the value of all the husband's property, but not so small and inadequate, when compared with what the wife might have been legally entitled to as alimony, as to justify the presumption that a fraud had been perpetrated upon her.

5. The relation of husband and wife is one of a highly confidential nature, and contracts between them ought to be closely scrutinized. *Cain* v. *Ligon*, 71 *Ga.* 92. Especially ought a con-

tract of the nature now under review, and the circumstances under which it was executed, to be carefully examined to see that the wife was not coerced or overreached.    But if the settlement was fair, though not as valuable as the wife might have been legally entitled to, and no fraud was practiced upon her to induce her to accept it, considerations of sympathy for her will not justify the courts in setting aside an agreement into which she entered openly and voluntarily, even though unwillingly (*Glaze* v. *Railroad Co.*, 67 *Ga.* 761 (2)), with full knowledge of its terms.    The two controlling questions with reference to the deed are, whether Mrs. Sumner accepted it, and whether any fraud was practiced upon her to induce her to accept it.    It is immaterial what Mrs. Sumner understood before the deed was executed, with reference to the kind of conveyance she was to receive.    All prior negotiations and agreements were merged in the deed; and if it was accepted, and there was no fraud, she can not complain.    On these two questions Mrs. Sumner testified as follows: "McLeod brought me the deed that I finally got, George Sumner being with him.    I was at Simmon's when they brought me the deed, and there was where I made the mistake. Simmon's wife was very bad off at the time (she is my daughter), and Dr. Bell was there and others was there, and it seems to me like my mind wasn't on the deed, and I couldn't think about it for studying about her.  I went out to where they were, out doors, and right back in the house, and she was suffering a great deal, and I would go back in the house, and the next week this thing had to be tried and settled at Camilla; and I said, 'Boys, what must I do?' and they said, 'Well, you use your own judgment about it,' and McLeod said, 'I think you had better take it.  You will go down there and them lawyers will pick you mighty close, and you will have to go way down to Camilla, and if I were you I would settle this thing;' and I said 'I don't know what to do, boys, you ought to tell me what to do; I can't think what is best for me to do,' and Tom McLeod said, 'My advice to you is to settle this.  You and the old man settle it, and that will save you going down yonder to Camilla,' and that is not out of the world.  Well, I couldn't think about it, and he said, 'It will save cost; them lawyers will pick you mighty close, and they will wind you up,' and I said, 'Well, I reckon I will take it, but I

will have more,' and my intention was to have more.    And then he hopped up to sue for the divorce, and I heard that Col. Walters told him that whatever he done not to sue for divorce; and as quick as he sued me for a divorce I hopped up and sued him. . . The deed that McLeod gave to me was not the kind of a deed that I expected to receive, and I didn't think Joe would have done me that way.    I expected him to make me a deed that would be a deed to me, and so that I could do what I pleased with it; because he had told me that he was going to make me a deed to it, and that was all I could get. . .  As to the deed to the land, I didn't understand nothing about no life-estate in the home place.    If you told me that he would make me a life-estate in the home place, I don't recollect it; I don't think you explained to me fully. . .  McLeod brought me that paper over there to Simmon's.    You were not present.    I didn't read the deed myself, but they read it to me.    The way they read it to me I didn't understand it.    I heard the deed read, but I didn't understand it; and when I accepted the deed I said, 'I will have more.'    Of course I took the deed, because McLeod told me that I had better accept it and save all this trouble of going way down yonder to Camilla.    It wasn't but just a short time in before it had to be tried; and he said they were going to pick me mighty close, and I said, 'Boys, you ought to tell me what to do.' I did not send the deed back to him, but took it and toted it about with me, put it in my trunk, and it got burned up in the house.    We were in possession of all that property and held it, except the sheep, and my intention was to take the sheep and have them marked; but he made me mad right at first about the sheep.    He paid me one hundred dollars for the sheep way yonder in October.    When I found out that I couldn't get any more, I accepted the money for the sheep, but the deed said they were to be turned over to me in marking time. . .  I made a mistake when I received that old piece of a deed. . .  I told the boys I didn't know what to do, but I would take that deed, and get more if I could."    Other witnesses testified that the account of what was said and done when the deed was brought to her, as detailed by Mrs. Sumner, was substantially correct.    A number of witnesses for Sumner testified that Mrs. Sumner had said she would have made no effort to set aside the settlement, if Sumner

had not brought suit for a divorce. It is apparent, from Mrs. Sumner's testimony, that the deed was accepted. She repeatedly states that she said she would take it, because it was the best she could do, but she would have more. The sole question, therefore, is whether the jury were warranted in finding that the deed was void for fraud. It may be that the contract was unwise, but this affords no reason for setting it aside. "Folly is not in all cases fraud." *Equitable Loan Co.* v. *Waring,* 117 *Ga.* 599 (3). Nor will ignorance of the terms of a contract by one of the parties at the time he signs it or accepts it be a sufficient reason for declaring it void at his instance, when the ignorance is not the result of any fraudulent act of the other party. *Petty* v. *Brunswick Ry. Co.,* 109 *Ga.* 678; *Georgia Medicine Co.* v. *Hyman,* 117 *Ga.* 853. There is not a particle of evidence that Sumner, or McLeod, did any fraudulent act to induce Mrs. Sumner to accept the deed, or anything to prevent her from acquainting herself fully with its terms and ascertaining her legal rights. McLeod seems to have advised her to accept the deed, but advice, or even persuasion, does not amount to fraud, when unaccompanied with any fraudulent misrepresentations. The evidence shows that the deed was prepared by Sumner's counsel and submitted to Mrs. Sumner's counsel, who, with full knowledge of the prior agreements, pronounced the deed satisfactory. Sumner may, and doubtless did, endeavor to obtain the best possible settlement for himself; but there is absolutely no evidence that he did anything to deceive his wife as to the terms of the settlement, or to prevent her from ascertaining her legal rights in the premises. The conclusion is irresistible that Mrs. Sumner knew and understood the terms of the deed. She hesitated, protested, asked for advice, and deliberately concluded that the deed represented the best settlement she could obtain. If, on account of her daughter's illness, she was in such a state of mental worry as not to be able to exercise proper judgment as to whether she ought to accept the deed, this was no fault of her husband, and he can not be held responsible for it. After a most careful and thorough consideration of the evidence, we feel constrained to hold that the jury were not warranted in finding that any such fraud was perpetrated upon Mrs. Sumner as would justify the setting aside of the deed or the contract of settlement. See *Hayes* v. *Ry. Co.,* 89 *Ga.* 264; *Howard* v. *Insur-*

*ance Co.*, 102 *Ga.* 137; *Jossey* v. *Ry. Co.*, 109 *Ga.* 439; *Angier* v. *B. & L. Asso., Id.* 625; *Walton Guano Co.* v. *Copelan*, 112 *Ga.* 319; *Ga. Med. Co.* v. *Hyman*, 117 *Ga.* 851, 853.

6. It was argued that the judgment of the trial judge, granting Mrs. Sumner temporary alimony and decreeing that the settlement between the parties was void for fraud, was binding upon Sumner on the trial of the suit for permanent alimony, and precluded him from setting up that settlement in bar of the suit. There are two sufficient replies to this contention. In the first place, the judgment in the temporary alimony proceeding was not pleaded. All matters in satisfaction or avoidance, except such as disprove the adversary's cause of action, must be made the subject of a special plea. Civil Code, § 5053. Res adjudicata must be specially pleaded. *Jones* v. *Lavender*, 55 *Ga.* 228; 9 Enc. Pl. & Pr. 617. See also *Evans* v. *Burge*, 11 *Ga.* 272 (2); *National Bank* v. *Mfg. Co.*, 59 *Ga.* 157. Mrs. Sumner had ample opportunity, between the date of the granting of the order allowing temporary alimony and the trial of the suit for permanent alimony, to have amended her pleadings and set up the judgment in bar. Such an amendment could have been made. *National Bank* v. *Mfg. Co.*, supra.

7. But even if the judgment had been pleaded, it would have been no bar. It has been several times held by this court that where the judgment of the trial judge granting or refusing an interlocutory injunction is based upon a "pure question of law," the decision will be res adjudicata on such question on the final hearing; but that the decision of the judge, so far as it was based on discretionary matters, as the finding of the facts from conflicting evidence, will not be binding. Thus, in *Collins* v. *Carr*, 116 *Ga.* 41, Mr. Chief Justice Simmons said: "If the judgment is not based upon pure questions of law but upon questions of evidence or of law and evidence, it is not binding or controlling upon the final hearing, unless the proof be the same as at the interlocutory hearing. Whenever a judgment depends upon the discretion of the court in deciding questions of law and fact, it is not binding." See also *City of Atlanta* v. *First Methodist Church*, 83 *Ga.* 448; *Ingram* v. *Trustees*, 102 *Ga.* 226; *Murphey* v. *Harker*, 115 *Ga.* 77, 91; 24 Am. & Eng. Enc. L. (2d ed.) 817; 1 Van Fleet's Form. Adj. § 27. A finding of fact

by the judge on an interlocutory hearing does not bind the jury if the evidence is conflicting, but his decision on questions of law will be binding after the facts are found by the jury. If the interlocutory judgment should be carried to the Supreme Court, and there affirmed, its decision on questions of law would be controlling on the final hearing, but the jury would still have a right to find the facts. The trial judge or the Supreme Court can settle the law of the case for all time, but can not tie the hands of the jury with reference to a matter of fact, about which it has as much discretion as did the trial judge on the interlocutory hearing. An order or decree granting temporary alimony is interlocutory in its nature. No decision which the judge may make on a discretionary matter will be binding in subsequent litigation, but only such decisions will be res adjudicata as relate to questions of law unmixed with any issue of fact. Thus, if the judge in the present controversy had, on the hearing of the application for temporary alimony, found that the settlement deed executed by Sumner was void by reason of some defect appearing on its face, that decision, even though erroneous, would have been res adjudicata in the trial of the action for permanent alimony. But the judge did not find that the paper was void on its face, but simply that, under the evidence introduced before him, Mrs. Sumner was fraudulently induced to accept it. It is to be presumed that there was sufficient evidence to warrant such a finding, but it was not res adjudicata in the trial before the jury. The jury had a right to pass upon this issue of fact independently of the judge's decision; and while they reached the same conclusion, there was, as we have seen, no sufficient evidence to authorize it.

The foregoing disposes of all of the questions made in the record which need be considered at length. Some of the grounds of the motion for a new trial do not contain sufficient assignments of error to raise any question for decision. Many of them relate to questions arising out of the settlement between the parties. Under the evidence in the record, the judge erred in submitting to the jury any question as to the validity of the settlement, but should have directed a verdict against the application for alimony. Not having done this, he should have granted a new trial on the ground that the verdict was without evidence to support it. As

to the evidentiary value of docket entries, see *McNulty* v. *Marcus*, 57 *Ga.* 507; *Thornton* v. *Perry*, 101 *Ga.* 608; *Clarke* v. *Tel. .Co.*, 112 *Ga.* 634.

*Judgment on the bill of exceptions of J. L. Sumner reversed; writ of error sued out by S. J. Sumner dismissed. All the Justices concur, except Cobb, J., disqualified.*