## 39. MISSOURI STATE LIFE INSURANCE COMPANY v. LOVELACE.

1. The sustaining of a general demurrer to a petition for equitable relief, filed in the superior court, upon the ground that the petitioner was not able to set up by way of defense, in a city court, the things which it sought to prove in order to cancel a policy of insurance, and the consequent dismissal of the petition, do not make the questions therein involved res adjudicata, so as to require the dismissal of a writ of error brought to review errors alleged to have been committed in the city court, even though the subject-matter of the suit was in both cases the same policy of insurance.

2. The judgment sought to be set up as res adjudicata must be the result of an actual and fair trial of the issues. It is not sufficient that there is an inference of a decision upon the same points. There must not only be identity of subject-matter, of persons, and of parties, but identity of cause of action.

3. Parties are presumed to contract with reference to the place of the contract. If the contract is valid there, it is valid everywhere. The lex loci contractus controls as to the nature, construction, and interpretation of a contract.

(a) By comity, the laws of a sister State will be applied in the enforcement of any contract to be performed in that State, so long as such laws do not conflict with the statutes, powers, or rights of this State, its well-settled public policy, or the public conscience.

(b) "The court on the trial of a cause may proceed on their knowledge of the laws of another State, and it is not necessary in that case to prove them."

4. In cases or doubt as to whether the common law or the statutes of another State shall prevail, the law will be 'construed more strongly against the framer and proposer of the contract; always preferring, in contracts of insurance, that construction most favorable to the insured.

5. Where the laws of another State pro hac vice apply, an answer to a suit based upon a contract to be performed in another State should be stricken, unless a meritorious defense, as judged by the laws of that State, is presented.

6. The penalty is one of the inherent rights attaching to a contract of insurance (in case there is groundless refusal to pay), to enable the beneficiaries to obtain, free from deduction, the original benefits of the provision in their favor, according to the tenor of the policy. Such damages and attorney's fees as would be recoverable by citizens of another State can likewise be recovered by citizens of this State, where the contract sought to be enforced is to be performed in such sister State.    Citizens of this State will not be deprived of any rights allowed citizens of the place of the contract, when the laws of that State are being administered at the choice of the insurer.

Action on insurance policy, from city court of Atlanta—Judge Reid.    June 20, 1906.

Argued January 15,—Decided March 22, 1907.

*J. W. Preston, Payne, Jones & Jones,* for plaintiff in error.

*Edgar Latham,* contra.

• RUSSELL, J.    We will first consider the motion of the defendant in error to dismiss the writ of error.    The motion is predicated upon the following grounds: "1st. That on the 30th day of April, 1906, the Missouri State Life Insurance Company, the plaintiff in error in the above-stated case, filed its petition against this defendant in error in the superior court of Fulton County.    A copy of said petition is hereto attached and marked 'Exhibit A,' and is made part of this motion.    2nd. That since the date of suing out the writ of error in the above-stated case by said company, the said case of the said company against this movant came on to be heard in the said superior court of Fulton County, and that the same was heard on a general demurrer made by movant to the said petition, on the 14th day of September, 1906, and during the September term, 1906, of said superior court, on which day this movant avers the court made and entered the following judgment therein, to wit: 'The general demurrer in this case coming on to be heard, it is ordered that the same be sustained and plaintiff's bill is dismissed.    September 14, 1906.    J. T. Pendleton, J. S. C. A. C.' 3d.    This movant avers that every contention which was made by

said company in its plea and answer to the suit brought by her against it in the city court of Atlanta, and that every issue involved in his case, was averred in said petition filed in the said superior court as aforesaid. 4th.. That the judgment of the said superior court, hereinbefore set forth, was not excepted to nor appealed from by said company, and that the September term of said superior court has expired, and that said company is now concluded and can not except to nor appeal from said judgment. 5th. That every issue involved in the above-stated case was determined adversely to said company by the said judgment of the said superior court aforesaid, and that said judgment is now res adjudicata, and said company has no right to have two tribunals determine the issues involved in the two different proceedings. 6th. That said plaintiff in error has no right to further prosecute the writ of error in this case, for the reason that it is concluded as to all assignments of error contained in the bill of exceptions in the above-stated case.. 7th. The said Mrs. Ophelia Lovelace avers that the various exhibits referred to in the petition filed by said company in the superior court aforesaid are contained in the record in the case at bar, and are, therefore, already before this honorable court. .8th. Wherefore she prays that said case be dismissed, for and on account of the reasons herein alleged."

If we were to consult our own ease we would cheerfully avoid the voluminous record in this case by sustaining the motion to dismiss the writ of error; and estoppels by judgment are favored.

"In Lampen v. Corke, Holroyd, J., says that estoppels are odious in the law (7 Eng. S. L. R. 209). It is often so said, and truly said, of estoppels by recitals in deeds, admissions in pleadings, and all of that class. They are not to be readily allowed. Estoppels by *judgment* are, however, not odious. They are to be received with as much favor as any other defense; because it is the interest of the commonwealth that litigation should cease." *Evans* v. *Birge,* 11 *Ga.* 265. On the other hand, "matters which have received a judicial determination can not be called again into controversy;" and this "applies with full force, not only in the same jurisdiction, but also as between courts of law and equity." *Pollock* v. *Gilbert,* 16 *Ga.* 402. In *Evans* v. *Birge,* supra, Judge Nisbet delivered the opinion and announced the following rule of decision as to the plea of res adjudicata, and established its limita-

tions: "It is very well settled that a fact which has been directly tried and decided by a court of competent jurisdiction can not be contested again between the same parties or their privies, in the same or any other court. A judgment, therefore, of a court of law, or a decree in chancery, is an estoppel to the parties thereto, and to those who are in privity with them. This is the rule. It is, however, carefully and strongly fenced. The judgment must relate to the same question, and must clearly decide it. If it came collaterally under consideration, or was only incidentally considered, there is no estoppel. And if the decision of the question is ascertained inferentially, by arguing from the judgment or decree and the pleadings in the case, there is equally no estoppel." And in *Brooking* v. *Dearmond, 27 Ga.* 58, it is held that "a judgment in one suit is not a bar to another suit, if, . . although the parties in the two suits are the same, they sue, or are sued, in one suit, in a right different from the right in which they sue, or are sued, in the other."

Applying Judge Nisbet's rule to the judgment of the judge of the superior court dismissing the equitable petition, as well as to the record in that case, we can not dismiss the writ of error on the ground of former adjudication, or hold that that judgment, although unexcepted to, is a bar to the right of the plaintiff in error to prosecute its writ of error in this court. The suit which was brought in the city court of Atlanta was an action upon a contract, to which the insurance company filed substantially four defenses: (1) that the insured had made certain false representations in his application, which avoided the policy; (2) that the insured committed suicide, which should reduce the amount of the recovery; (3) that the insured became intemperate, and that this caused his death, and, by the terms of the contract, avoided the policy; (4) that the policy never became effective, because the premium was not paid. The suit filed in the superior court for equitable relief by the company sought (1) to enjoin Mrs. Lovelace from prosecuting the case in the city court, (2) to cancel the contract of insurance upon the life of her husband, upon various grounds, and (3) to have the superior court take jurisdiction of the entire cause in equity and, by appropriate decree, establish the rights of the insurance company in the premises. While there are many statements in the company's petition in the superior court which are

similar to those contained in its answer to the suit in the city court,
they may all be considered as only incidental to the gravamen of
the suit. The twenty-second paragraph of the petition states the
reason why it is sought to have the intervention of the court of
equity,—to wit, that by virtue of the common-law character of the
city court of Atlanta, the petitioner was unable to avail itself of
various matters of equitable relief sought in the superior court.
There was no trial in the superior court, and the reasons which
controlled the judgment of the judge in dismissing the petition
can only be reached by inference; which, by Judge Nisbet's rule,
can not be done. The judgment which it is sought to set up as
res adjudicata must be the result of an actual and fair trial of the
issues. It is not sufficient that there is an inference of a decision
upon the very point. 21 Am. & Eng. Enc. of Law, 129. And if we
were to infer anything, it might fairly be *presumed* that the dis-
missal of the petition by the judge of the superior court was due
to his opinion that there was no reason for equitable interference
with the cause then pending in the city court, and now, by writ of
error, brought to this court. However this may be, the suit in the
city court was one cause of action, and the petition to the superior
court presented a different cause of action, and wherever a judg-
ment is sought to be set up as res adjudicata, not only must iden-
tity of subject-matter, of parties, and persons be shown, but identity
of cause of action must also clearly be established. The motion
to dismiss the writ is overruled, because, as was so well said by
the Court of Appeals of New York in Palmer *v.* Hussey, 87 N. Y.
303, "the conclusive character of a judgment as a bar extends only
to identical issues; and they must be such not merely in name, but
in fact and substance. If the issue in the later litigation is in-
trinsically and substantially an entirely different one, even though
capable of being described in similar language or by a common
form of expression, then the truth is not excluded by the judgment."

Mrs. Lovelace sued the defendant company for $2,000 principal,
$200 damages, and $500 attorney's fees, on a policy of life-insur-
ance, issued in June, 1904, on the life of Edwin Lovelace, her
husband, and in which she was named the beneficiary. One of the
stipulations of the policy was in these words: "This contract shall
be governed by and construed according to the laws of Missouri;
the place of this contract being expressly agreed to be the home

office of the company," which, as appears from other portions of the policy, was the city of St. Louis, Missouri. To this suit the defendant filed demurrer and answer. The demurrer contains several grounds specially demurring to the various paragraphs of the petition, as well as the general ground that the petition contains no cause of action. The demurrer was overruled. Exceptions pendente lite were filed, but were not presented and certified until after the opening of the next term of the trial court. This was too late to enable this court to review the order of the court upon the demurrer. The answer, besides denying the essential allegations entitling the plaintiff to recover, set up that the policy was void, because of false and fraudulent representations made by Lovelace in the application for the insurance,—namely, that he was at that time in good health, and usually enjoyed good health, that he was not then and never had been addicted to the use of narcotics or intoxicants, and that no company had ever declined to issue a policy upon his life; all of which statements were alleged in the answer to be untrue; that before the death of said Lovelace the company demanded from him a cancellation of the policy and received his promise that he would surrender it; that no consideration had ever passed to the company for the policy, because the premium thereon had never been paid; also that one of the conditions of the policy was that the policy should become null and void if within one year after its date the said Lovelace became intemperate in the use of narcotics or alcoholic drinks; that Lovelace did become so intemperate within such time, and that his death was the result of such intemperance. The company further answered, that said Lovelace distinctly stipulated that all the statements in his application for insurance were warranted to be true and complete, that no information or material facts were suppressed, and that the same was offered to the company as a consideration for the contract of insurance; that all of said statements were false and fraudulent, and made with the design of deceiving the insurance company, and did so deceive it; that one of the provisions of the policy was that if death occurred from self-destruction, while sane or insane, within one year from the date of the policy, only the reserve (computed according to the Actuaries' Table of Mortality, with interest at four per cent.) should be due upon the surrender of the policy; and that Lovelace did in fact destroy his own life within one year of

the date of the policy. The plaintiff filed a general and special demurrer to the plea and answer of the company. The general demurrer was sustained, and the plea and answer dismissed, except in so far as the answer denied liability for attorney's fees and damages. The plaintiff subsequently amended her petition, by averring that each and all of the statutes of the State of Missouri in force at the time the policy was issued became a part of the policy as effectually as if they had been incorporated therein; that at the time the policy was issued, section 7896 (chapter 119, article 2) of the Revised Statutes of the State of Missouri, was as follows: "In all suits upon policies of insurance on life hereafter issued by any company doing business in this State, to a citizen of this State, it shall be no defense that the insured committed suicide, unless it should be shown to the satisfaction of the court or jury trying the cause that the insured contemplated suicide at the time he made his application for the policy; and any stipulation in the policy to the contrary shall be void;" and section 7890 of said Revised Statutes was as follows: "No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this State, shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable; and whether it so contributed in any case shall be a question for the jury;" that §7929 of said Revised Statutes is as follows: "Every corporation, company, or association transacting business under the provisions of this article shall, upon the issuance of every policy, attach to such policy or endorse thereon the substance of the application upon which such policy was issued, and which is made a part of the contract of insurance, or referred to therein, or which may in any manner affect the validity of such policy;" that the substance of said application was not attached to or endorsed upon this policy; that the stipulation contained in the policy, making said application a part of the contract, is void; and that the policy alone constitutes the entire contract of insurance. Plaintiff further set up section 7867 of the Revised Statutes of Missouri, providing for the registration of policies , and that the policy sued on was a registered policy, and that the insurance company was estopped from claiming that the premium had not been paid thereon. Upon the allowance of these amendments the de-

fendant renewed its demurrer, and, besides the general demurrer that the petition contained no cause of action, demurred specially on the grounds: (1) that there is a misjoinder of causes of action, for the reason that the petitioner has brought suit upon the alleged contract of insurance and also upon an alleged tort for which she prays special punitive damages; (2) that section 8012 of the Revised Statutes of Missouri, referred to in paragraph 8 of plaintiffs' petition, is unconstitutional, in that it operates to deprive insurance companies of property without due process of law, and denies to them equal protection of the law, and requires them to pay attorney's fees and damages in certain cases to parties successfully suing them, while it gives them no corresponding benefits; (3) that the city court of Atlanta has no jurisdiction to enforce a penalty of the State of Missouri. This demurrer was, after a hearing, overruled by the court. Exceptions pendente lite to this judgment were filed in due form and in due time. The case went to trial before a jury, therefore, upon the one question whether the plaintiff should recover the penalties fixed by the Missouri statutes. A verdict was found for the plaintiff for the amount of the insurance with interest, and for $100 damages, and $500 attorney's fees; and a motion for new trial was made. The motion contains the usual general grounds, and, by amendment, the following additional grounds of alleged error: (1) The admission of the testimony of Edgar Latham and the refusal of the court to exclude his testimony that he was familiar with the insurance laws of the State of Missouri, and that the statutes pleaded in the cause and now before the court were the laws of force in that State at the time this policy was issued. (2) The admission in evidence of a book offered by the plaintiff entitled "Insurance Laws of the State of Missouri, 1903," upon the front leaf of which book was printed "Insurance Laws of the State of Missouri, 1903. Including laws governing and regulating fraternal beneficiary associations, trust companies, and pools, trust, and conspiracies. R. G. Yates, Supt. of Insurance;" Seal of State; "Jefferson City, Mo. Tribune Printing Co., State Printers and Binders;" and on the second page of said book, "Insurance Laws of the State of Missouri, Revised Statutes of 1899 and Acts approved 1901 and 1903;" said book being admitted for the purpose of proving what the laws of that State were. The motion for new trial was overruled; and by the writ of

error we are called upon to review the action of the court upon that motion, and those rulings of the court to which exceptions pendente lite were taken, as well as the overruling of an oral motion to dismiss that portion of the plaintiff's petition which sought to recover damages and attorney's fees; said motion being upon the ground that the allowance of the same was a matter of remedy governed by the laws of the forum, under which they could not be recovered.

We are clearly of the opinion that when the general demurrer was overruled, and this judgment was not excepted to during the term at which it was rendered, the petition became the law of the case so far as the defendant was concerned. *Sims* v. *Georgia Ry. & Electric Co.,* 123 *Ga.* 643 to 645, and cases therein cited. If we are right in this, the subsequent demurrer offered by the company could not be considered by the court below, because in conflict with its prior ruling. Section 8012 of the Revised Statutes of Missouri, which was a ground of the second demurrer, was pleaded in the original petition and passed upon in overruling the first demurrer. As to the ground that there was a joinder of suit upon the contract of insurance with suit upon an alleged tort, we think it was properly overruled by the court. The ground that the court had no jurisdiction to enforce the penalty of another State will come more properly under what we shall have to say further on, with reference to the application of the laws of Missouri to the case as a whole. Suffice it to say here that the law of Missouri was the selection of the company itself, and will be enforced, unless in conflict with our law or our public policy.

Much stress is laid by learned counsel for the company on the fact that certain of the Missouri statutes use the term "citizens of this State," and it is contended that by reason of these words the benefits which would accrue to the plaintiff in this case were she a citizen of Missouri are denied to her, because she is a citizen of Georgia. From the place assigned these sections in the Revised Statutes of Missouri it is evident to our minds that these words are used merely because it would naturally be presumed that generally the persons to be affected by the provision of the Missouri statutes would be citizens of Missouri; and as the plaintiff is forced, by the very contract prepared and proposed by the company, to have the contract construed and her rights adjudicated by the laws of Missouri, it is apparent that the words "citizens of this State"

may be treated as mere surplusage and rejected as such.  The guaranty in the fourteenth amendment of the constitution of the United States, which declares that "no State shall deny to any person within its jurisdiction the equal protection of the laws," was said by Justice Bradley, in Missouri v. Lewis, 101 U. S. 22, 30, to include "the equal right to resort to the appropriate courts for redress." "It means," as was further said by the court, "that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances."  The same court, in United States v. Cruikshank, 92 U. S. 542, 555, per Waite, C. J., used the following language, in discussing the foregoing constitutional clause: "The equality of the rights of citizens is a principle of republicanism.  Every republican government is in duty bound to protect all its citizens in the enjoyment of this principle, if within its power. That duty was originally assumed by the States; and it still remains there."  In our view of this case the city court of Atlanta was for the time being a Missouri court, so far as the "validity and effect" of this contract is concerned.  Under article 4, section 2, of the constitution of the United States, "the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States."  Sitting as it were in Missouri, so as to give "effect" to the contract, the trial court could not consider Mrs. Lovelace as other than a citizen of Missouri, at least in so far as to accord her any "privileges" appertaining to such citizenship, and to enforce the laws of Missouri, construing them most favorably to the insured. In the language of our Supreme Court in *Champion* v. *Wilson,* 64 *Ga.* 188, "The law of New York entered into this contract, as it was . . to be executed there, and our courts will enforce it, whatever it may be; and this contract must stand or fall as the test of that law is applied to it."  And applying the language of the decision in that case to Missouri instead of New York: "When so applied it becomes, as the law of the contract, Georgia law; and it matters not where it comes from.  For this case—pro hac vice —it is our own law."

We do not see either that the demurrer, which had at a former term been overruled, could be renewed at a subsequent term; or that it can be justly claimed that the plaintiff's petition set forth two causes of action merely because the plaintiff offered an amend-

ment setting up certain statutes of the State of Missouri, in ampli-
fication and aid of rights already claimed in the original petition.
Foreign statutes may be pleaded by amendment. *South Carolina
R. Co.* v. *Nix,* 68 *Ga.* 572. And the amendment in that case was
expressly approved because allowable by the laws of South Caro-
lina (15 Rich. 201). The amendment did not materially change
the cause of action, and gave no right to dig up a dead demurrer
and have its sufficiency again passed upon. Civil Code, § 5068.
The motion to dismiss that part of plaintiff's petition that sought
to recover damages and attorney's fees was properly overruled; be-
cause, even as a matter of remedy and as governed by the laws of
the forum, such penalty and damages can be recovered in Georgia;
and the defendant's motion was made upon the distinct ground that
they could not be so recovered.

We come next to the amended grounds of the motion for a new
trial, which relate to the method of proving the laws of Missouri.
It is settled that where either party claims a benefit under a for-
eign law, the statute must be pleaded; and of course, where the
laws of a foreign State are specially pleaded, they must, as any
other material matter, be proved. *Champion* v. *Wilson,* supra.
But according to prior decisions of our courts, there is no inexor-
able rule which demands a certain kind of proof or prescribes the
exact quantum of proof required to satisfy the trial court as to the
authenticity of the statutes of one of our sister States. The court's
own knowledge may give testimony and supply the proper verifi-
cation of the law. "The courts, on the trial of a cause, may pro-
ceed on their knowledge of the laws of another State, and it is not
necessary, in that case, to prove them; and their judgment will
not be reversed, when they proceed on such knowledge, unless it
should appear that they decided wrong as to those laws." *Hersch-
feld* v. *Dexel,* 12 *Ga.* 582. Three methods of proof have been
recognized. One is by proof of witnesses, testifiying as to their
familiarity with the law in reference to a certain subject. A sec-
ond method is by certified copy of the statute in question. And
the third method of proof is, we think, clearly authorized by the
code; which is judicial recognition. Civil Code, § 5231. An in-
stance of the first appears in *Chattanooga, Rome & C. R. Co.* v.
*Jackson,* 86 *Ga.* 681, where the Supreme Court approved proof by
attorneys, who testified as to the law of Tennessee (as Latham did

in this case as to the law of Missouri) except that they testified that they had practiced law in Tennessee, and Latham did not testify that he had practiced in Missouri. In that case, Justice Simmons, in dealing with the exceptions to the testimony of the attorneys proving the law of Tennessee, lays down the following rule: "'The public laws of the United States and of the several States thereof, as published by authority, shall be judicially recognized without proof.' While, therefore, the trial judge might have resorted to the statutes and the decisions of the Supreme Court of Tennessee, we can not say that it was error to receive the testimony of skilled attorneys who practiced in the courts of that State, to aid him in arriving at a proper conclusion as to what was the law of that State, and especially as to the practice of the courts thereof in regard to appeals and their dismissal. The testimony was not for the jury, but for the information of the judge; and he was not bound by the opinions of these attorneys, but it was his duty at last to decide the law himself, aided by these opinions and such other sources of information as'.were accessible to him. Knowing as we do the great difficulty under which courts labor in arriving at the true law of a case, and especially the difficulty encountered here as well as by the court below in this case, we can not condemn the trial judge for resorting to any sources of information which will aid him in coming to a correct conclusion as to the law." The learned Justice cites Hanley v. Donoghue, 115 U. S. 1, and Chicago & Alton Railroad v. Wiggins Ferry Co., 119 U. S. 615, as authority approving this method of proof, and refers to the fact that in other States that have no statutes like ours, evidence of this kind is the proper mode of proving the laws of another State. And in *Thomas* v. *Clarkson, 125 Ga.* 77, the same method of proof is recognized, and the only criticism passed upon it by the court was that the evidence of the witness did not refer to or show what the law was *at the time of the contract.*

The method of proving the laws of other States by copy thereof, "under the great seal of their respective States," is provided for by the Civil Code, §5233; but this mode of proof·is not, as has sometimes been supposed, exclusive of every other means. That the court may consider the law as proven, by judicial recognition of its terms and provisions, is shown in *Massachusetts Benefit Life Association* v. *Hale, 96 Ga.* 802, where it was decided that

a stipulation in a policy (which, like this, was to be governed by
the lex loci contractus), that no suit should be brought under the
contract unless within one year from the death of the member, was
void, because the law of Massachusetts allowed such suit to be
brought within two years. In that case, "while it does not ap-
pear in the reported decision . . that the Massachusetts statute
was not invoked in the trial court, an examination of the original
record shows that no reference whatever was made to this law in
the pleadings of the parties." *Seaboard Air-Line Ry.* v. *Phillips,*
117 *Ga.* 101. See, also, *Barranger* v. *Baum,* 103 *Ga.* 466. No au-
thoritative ruling was made by our Supreme Court upon this sub-
ject in *Seaboard Air-Line Ry.* v. *Phillips,* supra, because it was not
required, but we think that the reasoning of Justice Cobb is un-
answerable, and that section 5231 of the Civil Code means just
what it says, and is founded upon sound reasoning. "If a book
containing the laws as published by authority is not accessible,
then, in the absence of a copy of the law under the great seal of
the State, the case would generally have to be determined by a pre-
sumption that the common law prevailed in the other State." We
think it absurd that a court of this State should be required to ad-
minister, as the law of a sister State, that which is not the law,
when it has before its eyes an open book showing what is the law,
refusing to see what may be seen by all men, merely because it was
not formally offered as evidence on the trial. We think, then,
that our view that there is no merit in the amended grounds of the
motion for new trial is sustained by ample authority; and we come
to the question which, after all, must determine the case,—whether
the court erred in the rulings which were the subject of the excep-
tions pendente lite. That question is, did the court err in trying
the case by the laws of Missouri, and if so, how?

The policy of insurance prepared by the company named the
situs in which it preferred its right to be administered, and made
the State of Missouri the place of the contract. Having made
choice, it is bound by its selection, and estopped to vary or retract
its own contract from its written provisions. The policy, in its
concluding paragraph, says, "This contract shall be governed by
and construed according to the laws of Missouri; the place of this
contract being expressly agreed to be the home office of the com-
pany." All contracts of insurance are to be construed most

strongly against the insurer and in favor of the insured, and if, therefore, the court had entertained doubt as to which law prevailed as to any phase of the case, the company having selected in the contract, which it prepared itself, the laws of Missouri, the court was bound to construe the contract by those laws of Missouri, most favorably to the insured. If this means anything it means that the validity, form, and effect of the contract are to be determined by the laws of the State of Missouri. Georgia enforces the laws of another State only by comity. But that comity will extend, in passing upon a contract made to take effect and be performed in another State, so as to give effect to every law of that State applicable to the subject-matter of the litigation, except such as conflict with our laws or such as are opposed to the well-known public. policy of the State. The question is, was the court right in trying the case by the law of Missouri, and, if so, to what extent should the law of Missouri have controlled? The company selected the law of Missouri as its choice. Can it complain if that law is administered? And while he who claims a benefit under the law of a foreign State must plead and prove that law to the satisfaction of the court, in some one of the modes to which we have referred, still, in the administration of such laws as collaterally, rather than directly, affect the case, it can not be questioned that the court may in any way possible inform itself as to what is the law. The means of finding it are immaterial, provided only that the true and correct law is found. The court must inform itself; and judged by this rule, the learned judge of the trial court was right in striking all of the defenses of the defendant company. The court had previously overruled the demurrers to the plaintiff's petition, and (no exception having been duly taken thereto) the right of the plaintiff to stand on her petition, both as to the law and as to the facts, was established. If her rights as to either were questioned before, as to any portion of the petition, her rights as to both were extended to the extreme boundary lines fixed by the petition. This petition the plaintiff had the right to amend, and that right was not abused.

The plaintiff in error excepted pendente lite to the allowance of certain amendments, for reasons given in its demurrer, and error is assigned thereon in the bill of exceptions. We think the court was right in overruling the demurrers and allowing the amend-

ments. The gravamen of the defendant's objection must have been that contained in the first demurrer, that there was a misjoinder of causes of action, the defendant contending that, joined to the suit on the contract of insurance, the plaintiff was praying for punitive or vindictive damages. The damages were alleged and asked for, and § 8012 of the Revised Statutes of Missouri was specially pleaded in the original petition, the special and general demurrer to which had been overruled, and, therefore, to offer this demurrer again was to ask the court to reopen what had already been settled as the law of the case. But waiving this, we see no error in overruling this demurrer to the petition. The plaintiff was entitled to the damages if she established the allegations with reference to vexatious refusal, under the Civil Code, § 8. It was one of the effects of the contract which our courts will enforce. The question of the constitutionality of the very statute of Missouri which was pleaded in this case, and which allows damages and attorney's fees, has been passed upon by the Supreme Court of the United States, in Orient Insurance Co. *v.* Daggs, 172 U. S. 557; and it is not repugnant to our constitution. The contract in the Daggs case was one of fire-insurance instead of life-insurance, but § 8012, cited supra, includes both. Its wording is "In any action against any insurance company . . under a policy of fire, life, marine or other insurance, . . the court or jury may allow damages." The decision likewise covers life-insurance as well as fire-insurance; for the Supreme Court of the United States, in Farmers etc. Ins. Co. *v.* Dabney, 189 U. S. 305, citing and referring to the Daggs case, says the statute of the State of Missouri was upheld "not only on the ground of the right of the State to prescribe the conditions upon which an insurance company should transact business within its borders, but also because the rule in question was the lawful exercise of the power to classify."

In reference to the plea of suicide, the statute (Revised Statutes of Missouri, § 7896), voids any suicide provision in policies of life-insurance. But it was insisted that the provision in this case is not in the nature of a defense to the action, but simply provides for an apportionment of the loss in case of suicide; simply reducing the amount to be recovered, without defeating recovery itself. This same question has been decided by the Court of Appeals of Missouri, passing upon a provision identical with the contents

of the policy under our consideration.    In Keller *v.* Travelers Insurance Co., 58 Mo. App. 557, the Missouri court held as follows, as to reductions in cases of suicide: "A provision in a policy of life-insurance, which reduces the amount of the insurance in case of the suicide of the insured below that otherwise contracted for, makes the suicide a defense to the extent of the reduction, and is, therefore, contrary to the statute on the subject and invalid."   In the Keller case the only question presented was, whether or not the contract sued upon was in contravention of § 7896 of the Revised Statutes of Missouri, but, as in the present case, was embodied by the plaintiff in her petition.    That section is as follows:   "In all suits upon policies of insurance on life hereafter issued by any company doing business in this State, to a citizen of this State, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy; and any stipulation in the policy to the contrary shall be void."    The clause of the policy relied on in the answer in this case is as follows: "but if death occurs from self destruction, while sane or insane, within one year from the date of issuance of this policy, then in such event only the reserve (computed according to the Actuaries' Table of Mortality, with interest at four per cent.) will be due on surrender of this policy."

The plaintiff in error urges that the clause of the policy invoked in this answer is a mere contractual limitation of the amount of the recovery to be had, and not a defense.    Under the above-quoted decision of the Court of Appeals of Missouri, we can not agree with this contention.   "The plain purpose of the statute quoted above was to prevent the insertion in policies of life-insurance of exceptions of liability on the ground of the suicide of the insured, unless it could be proven 'that the insured contemplated suicide at the time he made the application for the policy.'   This was in effect a legislative declaration of the public policy" of Missouri, the State which the company itself selected as the place of contract.    In the Keller case, above cited, the Court of Appeals of Missouri says: "That it was intended to limit the power to contract for a lesser liability in cases of death by suicide, not within the limitation expressed in the statute, is also apparent from its terms, to wit: 'and any stipulation to the contrary shall be void.'

That it is not within the power of the parties to change or annul this statutory provision with reference to life-insurance in this State, has been held in a well-considered case in the circuit court of the United States. Berry *v.* Knights Templars' Co., 46 Fed. Rep. 439. In construing the statute in question, that court said: "'The statute is mandatory and obligatory alike on the insurance company and the assured. Its very object was to prohibit and annul such stipulations in policies, and it can not be waived or abrogated by any form of contract or by any device whatever. The legislative will, when expressed in the peremptory terms of this statute, is paramount and absolute, and can not be varied or waived by the private conventions of the parties.'"

For the same reasons as heretofore stated, we think that the question of attorney's fees and damages should also be determined by the laws of Missouri. As Chief Justice Jackson said in the case of *Champion* v. *Wilson,* supra, the court was pro hac vice sitting in Missouri, and the finding of the jury is in accordance with that law, which the Supreme Court of the United States has held to be constitutional and valid. "It was for the legislature . . to define the public policy of that State in respect of life-insurance, and to impose such conditions on the transaction of business by life-insurance companies within the State as was deemed best. We do not see any arbitrary classification or unlawful discrimination in this legislation, but, at all events, we can not say that the Federal constitution has been violated in the exercise, in this regard, by the State of its undoubted power over corporations." Hancock Insurance Co. *v.* Warren, 181 U. S. 73. The reasoning in Railway Co. *v.* Ellis, 165 U. S. 150-153, 154, says the court, in Fidelity Mutual Life Association *v.* Mettler, 185 U. S. 326, does not apply to life-insurance companies. "The ground for placing life and health companies in a different class from fire, marine and inland companies is obvious, and we think that putting them in a different class . . rests on sufficient reason. The legislature evidently intended to distinguish between life and health insurance companies engaged in business for profit, . . and lodges and associations of a mutual benefit or benevolent character, having in mind also the necessity of the prompt payment of the insurance money in very many cases in order to provide the means of living of which the beneficiaries had been deprived by the death of the insured."

And in Orient Insurance Co. *v.* Daggs, 172 U. S. 557, the inter-
pretation and construction of the Supreme Court of Missouri as to
a similar statute was upheld.   In Farmers Insurance Co. *v.* Dob-
ney, 189 U. S. 304, the Supreme Court of the United States, hav-
ing under consideration the question of the allowance of attorney's
fees and damages, and answering argument contending, as here,
that such allowance was unconstitutional for various reasons, says:
"But the unsoundness of these propositions is settled by the pre-
vious adjudications of this court. . Orient Insurance Co. *v.* Daggs,
172 U. S. 557; Insurance Co. *v.* Warren, 181 U. S. 73; Insurance
Co. *v.* Mettler, 185 U. S. 308.   In the Orient case, a statute of the
State of Missouri, which subjected fire-insurance contracts to an
exceptional rule, was upheld, not only on the ground of the right
of the State to prescribe the conditions upon which an insurance
company should transact business within its borders, but also be-
cause the rule in question was the lawful exercise of the power to
classify.   In the Warren case a like principle was applied to a
statute of the State of Ohio establishing a particular regulation as
to life-insurance companies.   In the Mettler case a statute of the
State of Texas was sustained, applicable alone to life-insurance
policies, which authorized the enforcement, not only of a reason-
able attorney's fee, but also of twelve per cent. damages after de-
mand in case of the unsuccessful defense of a suit to enforce a life-
insurance policy.   In all three of the cases referred to, therefore,
it was necessarily held that insurance contracts were so distinct
as to justify legislative classification apart from other contracts,
or to authorize a classification of insurance contracts so as to sub-
ject one character of such contracts, when put in one class, to one
rule, and other varieties of such contracts, when placed in another
class, to a different rule."

We come now to the complaint with reference to the striking of
defendant's plea.   If the court was right in adjudicating the case
according to the laws of Missouri, it was clearly right in striking
the defendant's answer, upon the ground that it constituted no de-
fense.   The defense was based upon five propositions:

(1) That Lovelace had made false statements in his application
and failed to pay his premium.   Under the statute of Missouri the
company could not plead the application as a part of the contract,
for it was not endorsed or the substance of the application entered on

the policy. We hold further that it could not plead non-payment of the premium; because the receipt of the premium was acknowledged in the policy, and it was estopped from denying this fact, especially in view of the death of the insured. The further portion of the fourth paragraph of the answer, that the policy was issued by reason of the false and fraudulent representations of Lovelace, and that the policy was procured by fraud, could not be considered after death of the insured. "The statements made in the application . . were not warranties, and before the company can be permitted to show that these false statements and answers contributed to the contingency on which the policy was to become due and payable, it must plead such defense, and besides, it must deposit in court the premiums it received on the policy. And unless the company meets both these requirements the court should exclude the testimony . . as to the cause of the insured's death, and as to his physical condition before and after his death, and give a peremptory instruction to find for plaintiff." "The company may, during the life of the insured, but not afterwards, bring a suit to set aside the policy on the ground that it was procured by fraud." Kern *v.* Legion of Honor, 167 Mo. 472.

(2) The fifth paragraph of defendant's answer denied that the premium was ever paid, and, as we said above, we think the recital of the policy that the premium had been paid estops the company to deny the receipt of the premium after the death of the insured.

(3) The sixth paragraph of the answer set up as a defense, that "one of the conditions of said alleged contract of insurance was that if within one year from the date thereof said Edwin Lovelace should become intemperate in the use of narcotic or other stimulants, any policy issued thereunder should be null and void; and this defendant alleges that the said Edwin Lovelace did become intemperate in the use of narcotic, alcoholic, or other stimulants, and that his death was the result of narcotic, alcoholic, or other stimulants." Counsel for plaintiff in error, in their very exhaustive brief, say, "We are at a loss to know how counsel for defendant in error ever convinced the court below that this one of the defenses was not good." We think that under the decision in Kern *v.* Legion of Honor, cited above, the answer should have been accompanied by the deposit in court of the premiums received; and

without this, it is held unequivocally by the Supreme Court of Missouri that this defense should be dismissed.

(4) The seventh and eighth paragraphs of the answer were correctly stricken, under the laws of Missouri,—the seventh for the reason that the application was not endorsed upon the policy, and the eighth because the anti-suicide provision of the policy, as has been shown heretofore, is, under the laws of Missouri, void and of no effect. We have carefully examined all of the contentions of the learned counsel for the plaintiff in error, grouped in three heads: First, that the statute of the State of Missouri, allowing the recovery of damages and attorney's fees, will not be enforced by the courts of Georgia. Second, that the court erred in striking the defenses; which is assigned to be error upon three grounds: (a) that the main defenses, if proved, were good; (b) that the statutes of Missouri relative to misrepresentations and procurement of the policy by fraud, and relative to the suicide of the insured, are confined to citizens of Missouri; and (c) that the provision in the policy sued on, relative to the matter of suicide, was not in violation of the laws of Missouri. Third, that the evidence was not sufficient to authorize the verdict allowing the plaintiff damages and attorney's fees, because it did not show vexatious refusal on the part of the company to pay. For the reasons already heretofore stated we think the case was to be tried as if in Missouri and before a Missouri court, and that to deprive a citizen of Georgia of any rights belonging to a citizen of Missouri can not, under the constitution of the United States, be countenanced. Parties are presumed to contract with reference to the place of the contract. If it is valid there, it is valid everywhere. The lex loci contractus controls as to the nature, construction, and interpretation of the contract. The laws of one State have force in the territory of another, as long as they do not come in conflict with the power or right of that State, or violate its policy or conscience. *Cox* v. *Adams,* 2 *Ga.* 158. Where a contract is made in one State to be performed in another, the laws of the latter State govern as to the validity, nature, obligation, and construction of the contract (*Dunn* v. *Welsh,* 62 *Ga.* 241; *Herschfeld* v. *Dexel,* 12 *Ga.* 584); and they will be enforced by comity, unless contrary to our statute law, our general public policy, or violative of the conscience of the State called on to give it effect. We see no reason why a new trial should be granted

30

because of the recovery of the attorney's fees and damages, especially as the Missouri statute is practically identical with our Georgia law upon the same subject. The only difference is that the State of Missouri imposes the penalty for a vexatious refusal, and the Georgia law (Civil Code, § 2140) makes bad faith in the refusal the basis for damages and attorney's fees. The various grounds of the second contention of the plaintiff in error have already been discussed, and so we come to the third.

Was the evidence of vexatious refusal sufficient to authorize the verdict upon the subject of damages and attorney's fees? We think that where it appears, as it does in this case, that the defendant had no ground of defense, or at least could set up none, to the payment of the policy, and yet declined to pay it, and thereby imposed upon the beneficiary a burden not contemplated in the original contract with the insured, and, without establishing any good reason for delay, subjects the widow and children of the dead to the expense of collecting by law what was contracted to be paid upon proofs of death, and extensively prolongs the litigation, it would be a great hardship if this loss and expense should be deducted from the provision made by the deceased for his family. On the other hand, we think that the expense necessary to collect the policy should be paid by the company, unless it establishes some good reason for an apparently frivolous refusal to pay promptly. In other words, the burden of proof, where unusual and unnecessary delay is shown, should be upon the company, to give reason for the delay; or, after the delay is shown, it will be presumed to be vexatious, as in this case, or in bad faith, if under our Georgia statute. It must appear, from the evidence in this case, that the refusal or the neglect to pay was frivolous. The purpose of the law is to force prompt payment of such losses, after the lapse of a reasonable time, to enable the company to ascertain good grounds, if any, for not meeting the demand, and if no such cause existed for the refusal of compliance with the demand and it refuses to respond, the company does so subject to the further claim for damages. *Cotton States Life Ins. Co.* v. *Edwards*, 74 *Ga.* 231. The meaning of the term "bad faith" is "any frivolous or unfounded refusal in law or in fact to comply with the requisition of the policy-holder to pay according to the terms of his contract and the conditions imposed by the statute." We can hardly

imagine anything that would be more "vexatious" than the treatment—the silent contempt—the plaintiff received at the hands of the company up to the time the suit was brought. We think the evidence authorized the jury to find that there was a vexatious refusal; and it was a benefit to the company that the penalty was affixed by the Missouri statute, instead of under the provisions of our code, which would have allowed a larger penalty. For the decision in *Phœnix Insurance Co.* v. *Hart,* 112 *Ga.* 765, holding section 2140 of the Civil Code to be unconstitutional, was based entirely upon the decision of the Supreme Court of the United States in Gulf, Colorado & Santa Fe Railway Co. *v.* Ellis, 165 U. S. 150, as controlling authority; and, since the decision in the *Phœnix* case, the Supreme Court of the United States has held, in the Mettler case, 185 U. S. 308, that the ruling in the Ellis case is confined to railway companies only, and has no application whatever to penalties imposed on insurance companies.        *Judgment affirmed.*

POWELL, J., concurring specially.    I can not agree with all the reasoning by which my brethren of this court arrive at the result in this case; indeed it is only with hesitation that I am able to concur at all. It does seem, however, that if the insurance statutes of Missouri are to be read into the contract of insurance as a part thereof, these laws, as construed by the decisions of the courts of review in that State, authorize an affirmance of the judgment. The difficulty is that these statutes do not on their face purport to include the plaintiff within their purview. By express language they are applicable only to policies of insurance written upon the lives of citizens of Missouri; and it is presumed that as to policies of insurance not written upon lives of its own citizens, the common law still prevails in that State. But I have finally come to the conclusion that since policies of insurance are to be most strongly construed against the insurer, the language of the policy, wherein it contracts that the rights of the parties thereunder shall be determined in accordance with the laws of Missouri, contemplates these statutes, and not the common law merely; in other words, that the policy contracted to give to Lovelace the same rights which he would have if he were a citizen of Missouri. In this view of the question I am able to concur in the judgment.