## 3341. MURPHEY v. CREAMER.

1. Several assignments of error in the motion for new trial are withdrawn from consideration by the ruling of the court below upon the demurrer, to which no exception was filed. The points presented by the demurrer are res judicata. Even though ordinarily the same points could properly be presented by motion for a new trial, the ruling on the demurrer, not excepted to, is the law of the case; and by this law the validity of the assignments of error is to be tested.

2. A ground of a motion for a new trial which purports to assign error upon the admission of testimony alleged to be objectionable presents nothing for the consideration of this court upon review, unless it affirmatively appears that the same objection was made upon the trial. "A ground of a motion for a new trial, assigning error upon the admission of certain quoted testimony over the objection of the movant, without stating what the objection was upon which the trial judge ruled, is so incomplete that this court can not pass upon it."

3. The court did not err in refusing to charge the jury that the rights of the lessee and his assigns under a lease for five years would prevail over and be superior to any subsequent rental from Parks (the landlord) to Creamer.

4. The consideration of a parol contract is not necessarily invalid because it is not payable on a definite day, for it may be mutually understood that such consideration is to be paid at a time or within a period which can be definitely ascertained.

5. A contract is not void for want of mutuality merely for the reason that it is agreed the purchase-price is to be paid from the proceeds or profits of a going business.

6. The failure to except to the ruling upon the demurrer pointing out that there was a misjoinder of distinct causes of action precludes any question of the correctness of the ruling, when it is sought to test its correctness by motion for a new trial. Even if the ruling is error, it may become the law of the case by failure to except in time, or by waiving the right to except. The excerpt from the charge to which exception is taken, however, is in the language of the Supreme Court in *Porter* v. *Johnson*, 96 *Ga.* 146-7 (23 S. E. 123), and, in view of the defendant's waiver of the right of exception, was not error.

7. The remaining assignments of error not specifically dealt with in the opinion are none of them of sufficient merit to warrant the grant of a new trial.

DECIDED FEBRUARY 29, 1912.

Action for damages; from city court of Richmond county— Judge W. F. Eve. March 15, 1911.

38

The petition alleged, that on January 10, 1908, the plaintiff went into possession, as the owner, of a certain wood and coal yard in the city of Augusta, formerly known as the wood and coal yard of S. M. McKendree & Company; that prior to the date first mentioned it had been owned by the defendant, Murphey, either in his own right or in connection with one Zachry; that the business, with all equipment and appurtenances, was sold to him, by verbal contract, for $2,400, payment to be made as the sales of the business would warrant, the defendant expressly agreeing not to press payments during the summer months; that the balance of the purchase-money was to become due within a reasonable time after the summer months were past, and that delivery of the property was made to the plaintiff in accordance with these stipulations; that the plaintiff paid $1,465 on the purchase-price, leaving only an unpaid balance of $935; that on July 29, 1908, the defendant came to the plaintiff's place of business and forcibly took possession of the wood-yard and all the equipment and appurtenances, and the stock of wood and coal, over the protest of the plaintiff's agent and without any authority of law; that the property thus seized by the defendant was worth $2,400, and that, by reason of its appropriation, the plaintiff claims damages in the sum of $1,500. The petition alleged also that the premises were rented by the plaintiff from one Parks, and that the invasion of the premises, in violation of the plaintiff's right to the same, was a wilful and malicious trespass, by reason of which the plaintiff was damaged in the sum of $250.

Another paragraph of the petition alleged the issuance of a possessory warrant by the plaintiff for the recovery of certain personal property, including the door-key and a bunch of keys which had been seized by the defendant, and the award of the property, under the possessory warrant, to the plaintiff, whereupon the defendant sued out a writ of certiorari, which he thereafter allowed to be dismissed. It was also alleged, that after the decision of the magistrate in favor of the plaintiff, the defendant swore out a possessory warrant against the plaintiff before Bennett, a justice of the peace, alleging that the property which was in his (the defendant's) own possession was at that time in the possession of the plaintiff; and that this possessory warrant was sworn out solely for the purpose of affording the basis for a plea that the prop-

erty described in the possessory warrant issued at the instance of the plaintiff was in the possession of a constable of Bennett's court. The plaintiff charged that the certiorari proceeding was a malicious use of legal process, without probable cause, made for the purpose of delaying the plaintiff in the assertion of his legal rights, and to retain possession of the keys and books, so as to fortify the defendant in the seizure of the plaintiff's business.

The plaintiff also claimed damages in the sum of $500 for malicious prosecution instituted by the defendant against him upon an accusation of trespass, and damages in the sum of $1,000 for profits which he would have received in the natural course of trade, of which he was deprived by reason of the trespass, seizure, and dispossession at the hands of the defendant.

A demurrer to the plaintiff's petition was overruled, but no exception to this ruling was filed. The defendant's plea denied each and all of the several paragraphs of the petition, and was amended so as to allege, that what the plaintiff claimed was a sale was merely a proposition to sell, that no completed contract of sale was ever made, and that the plaintiff's possession of the property in question was merely as agent for the defendant. The plea also alleged that there was probable cause for the issuance of the warrant, and that all the acts of the defendant were in good faith, and not actuated by malice; and, moreover, that the alleged contract was violative of the statute of frauds. Upon the trial the jury rendered a verdict in favor of the plaintiff, for $1,000 actual damages, and $250 punitive damages.

*E. H. Callaway*, for plaintiff in error.
*William H. Fleming*, contra.

RUSSELL, J. (After stating the foregoing facts.) By the demurrer to the petition, which was overruled, the defendant asserted: (1) That the petition sets out no cause of action. (2) That the petition is multifarious, joining in one suit more than one cause of action, and joining separate and distinct causes of action arising out of the separate and distinct transactions occurring at different times and at different places. (3) That there is a misjoinder of causes of action, in this, that the alleged cause of action set out in paragraphs 1, 2, and 3 is ex contractu, and the alleged cause of action set out in paragraphs 4 to 6 are ex delicto,

and the cause of action in paragraph 7 is ex contractu. (4) That it affirmatively appears that the personal property referred to in paragraph 1 was not the property of the plaintiff, and that the alleged contract of sale was void. (5) That the separate cause of action set out in paragraph 4 is vague and indefinite, and the statement of facts therein sets out no cause of action. (6) That the allegations in paragraphs 5 and 6 set forth no cause of action. (7) That the petition and the allegations in paragraph 5 do not set out a cause of action or state facts entitling the plaintiff to damages because the defendant sued out the certiorari therein referred to. (8) That the facts set out in paragraph 6 do not set out a cause of action. (9) That the allegations in paragraph 7 do not set out a cause of action against the defendant; the allegations are vague, indefinite, and insufficient in law to constitute a cause of action. (10) That there is a misjoinder of causes of action; actions ex contractu and ex delicto being joined in one petition.

1. It is not necessary to rule upon the merits of any of these grounds of the demurrer; for no exception was taken to the judgment overruling it; and thereby the ruling upon the demurrer, whether right or wrong, became the law of the case. *Lovelace* v. *Missouri State Life Ins. Co.,* 1 *Ga. App.* 446 (58 S. E. 93). The disposition of the demurrer only rendered it obligatory upon the plaintiff to prove the statements of his petition, in order to make out a prima facie case. Applying the doctrine of res judicata, as laid down in the *Lovelace* case, supra, as well as in *Georgia Northern Ry. Co.* v. *Hutchins,* 119 *Ga.* 510 (46 S. E. 659), *Ray* v. *Anderson,* 117 *Ga.* 136 (43 S. E. 408), *Savannah, Florida & Western Ry. Co.* v. *Renfroe,* 115 *Ga.* 774 (42 S. E. 88), and *Roberts* v. *Ivey,* 63 *Ga.* 623, to the ten grounds of the demurrer in the case at bar, it will be seen that several of the grounds of the motion for a new trial were practically eliminated, and present nothing for our consideration. This process of elimination applies to numbers 2, 18, and 19, alleging that the verdict is contrary to law and the principles of equity and justice; number 5, as to what constitutes a valid consideration; number 6, as to the definiteness of the terms of the contract; number 7, as to payments being made out of proceeds of the property conveyed by defendant to plain-

tiff; and number 8, as to the time when payments were to be made and the source from which the money was to be derived.

2. Several of the grounds of the motion for new trial complain of the admission of testimony, and state the reasons why the testimony objected to should not have been admitted. None of these assignments of error present anything for the consideration of this court, nor did they present anything for the consideration of the trial court at the hearing of the motion for new trial; for the reason that it does not appear that any objection now presented was made before the court at the time of the ruling complained of. The statement in an assignment of error that certain testimony is objectionable, and is now objected to for reasons therein stated, can not be considered, unless it affirmatively appears that the trial court ruled upon precisely the same objection, and that his judgment upon that objection was error. Nothing is better settled than that the distinct ground of objection to testimony must be clearly presented, and that, in default of an explicit statement of the ground of objection at the time the objection is interposed, the incorrectness of the court's ruling is immaterial, because no ruling has been properly invoked or required. *Soell* v. *State,* 4 *Ga. App.* 340 (61 S. E. 514). Where the point upon which a ruling is invoked in this court does not affirmatively appear to have been properly before the trial judge for his consideration, it is not error for the judge, when passing upon a motion for a new trial, to disregard this ground of the motion entirely, because defective. "A ground of a motion for a new trial, assigning error upon the admission of certain quoted testimony over the objection of the movant, without stating what the objection was upon which the trial judge ruled, is so incomplete that this court can not pass upon it." *McCray* v. *State,* 134 *Ga.* 416 (68 S. E. 62, 20 Ann. Cas. 101) This ruling disposes of the objections here urged to the admission of the possessory-warrant proceedings sued out by Murphey against Creamer, and to the possessory warrant sworn out by Creamer against Murphey, and the statement of Billings which Creamer was permitted to testify to.

3. In the third ground of the motion for a new trial the complaint is made that the court erred in refusing to charge the jury (on the issue as to whether Murphey or Creamer had the right of possession as the tenant of Parks as landlord) that "the rights of

the lessee and his assigns under the original lease from Parks, dated in January, 1906, to S. M. McKendree & Company, for a period of five years, would prevail over and be superior to any subsequent rental from Parks to Creamer, unless said written lease had been cancelled or surrendered." It is insisted by the learned counsel for plaintiff in error that, Parks having made a five-year lease to McKendree & Company in January, 1906, which had never been abrogated, surrendered, or forfeited, he was prevented from making any oral lease or contract with Creamer for the same premises in January, 1908; and that, for this reason, the instruction requested should have been given. Inasmuch as it appears that this contract was not transferred to Murphey until several months after Creamer had taken possession and after he had been recognized by Parks as his tenant, we fail to see any error in the refusal to charge as requested. The evidence was not undisputed that, at the time Creamer claimed to have rented the premises from Parks, Murphey was entitled to possession as tenant of Parks; and, unless it had been undisputed, the judge would have erred in charging as requested; for one of the vital points in the case was, who was Parks's tenant,—Murphey or Creamer; and it would not be true, as a matter of law, that the rights of the assignee of the contract of rental, acquired subsequently to Creamer's possession, would necessarily have been superior before the transfer, although they might have been so after the contract was formally assigned in writing.

4. The statement by the court that a promise or agreement to pay a certain price would be a consideration was not erroneous or calculated to mislead the jury, when considered in the light of the fact that it immediately followed an instruction upon the subject of consideration, which had been requested, in which the jury were told: "The consideration of a contract must be definite as to the amount or amounts, and the time or times of payment, so that the seller can enforce his rights and collect the same by suit, if not paid when due. A consideration which does not become due at some time definite or that can be made definite is not a valid consideration, and will not support a contract of sale." It is true that the sentence to which exception is taken does not refer to the definiteness of time which is essential in order to

create a contract, but that essential had been referred to so amply before that the jury could not have been misled.

5. One of the main grounds of objection urged in several assignments of error is that the contract which Creamer attempted to prove is a nudum pactum, because there is a total absence of mutuality. It is especially insisted that the contract is void because the only provision for the payment of the purchase-price is that it is to be paid from the proceeds of the business, and that this would be the payment to Murphey of his own property, and consequently no payment. We are cited to the cases of *Beall* v. *Clark*, 71 *Ga.* 818, and Dorsey *v.* Parkwood, 12 Howard (U. S.), 126, as authority for this proposition. We think the trial judge in this case went to the extreme limit in favor of the plaintiff in error when he charged that "a contract for the payment of the purchase-price of property from the proceeds of the property itself would be inoperative and void." He certainly did not commit an error when he later instructed the jury that a contract of purchase might be good which contemplated the payment of the purchase-price from the profits of the property purchased. The cases of *Beall* v. *Clark* and Dorsey *v.* Parkwood, supra, in our opinion, are not in point in this case. In the *Beall* case a minor son, to whose services a father was entitled, was told by his father that he would give him a certain plantation as soon as he made the money to pay the cost of it. The attempt to assert title in behalf of the son was based upon the code section which relates to the parol gift of real estate to a child, and the whole decision in the *Beall* case rests upon the proposition that the circumstances were not sufficient to raise the inference required by law in such cases. Our Supreme Court draws a distinction between the *Beall* case and the Dorsey case which clearly shows that our court was considering only the question of a parol gift of land by a father to his child. In the *Beall* case (p. 852) Justice Hall says, in regard to the Dorsey case: "In that case, the bargainer had no right to the services of the bargainee; *in this he had,* yet the Supreme Court of the United States held, without dissent upon the part of any of its members, that 'an agreement whereby the purchaser of a plantation bound himself' by writing, as appears from the record, ' to transfer to his son-in-law one half of the plantation, slaves, cattle and stock, as soon as the son-in-law should pay for one half

of the cost of said property, either with his own private means or with one half of the profits of the plantation, was deficient in mutuality.' The son-in-law was not bound to render any services nor pay any money." An examination of the Dorsey case shows that several legal considerations influenced the decision besides the lack of mutuality in the contract between Dorsey and Parkwood. While the portion of the headnote quoted by Justice Hall might lead to the conclusion that lack of mutuality alone controlled the decision, it must be borne in mind that there was absolutely no time fixed for the stipulated payment of half of the purchase-price, and that the court stated, as reasons for denial of the decree for specific performance, that the plaintiff, if bound at all, had shown no performance or offer of performance after an interval of 27 years, and also that there was a release. However, the plaintiff in error in the present case can not complain of the charge of the court upon this point, because the judge did instruct the jury, in one portion of his charge, that if they found Creamer's payments were to be confined exclusively to the proceeds of the property transferred, that would be no consideration, and there would be a lack of mutuality. Of course, in charging the converse of this proposition, the court was correct in telling the jury that if the contract was for a specific amount, and was not limited to the property transferred, then there would be mutuality, and the contract would be binding. It is evident that the use of the word "definite" did not mislead or confuse the jury, because, from the context, it is quite apparent that the judge was referring to the oral argument in behalf of the defendant, rather than to the pleadings filed in his defense. There can be no mistaking that it was argued there, as it has been ably insisted here, on the part of the then defendant, that the contract as to the property which Creamer claimed to have bought was void for lack of mutuality; because the judge proceeded to tell the jury that if payment under the proposed contract "was limited to the proceeds of the property sold, the seller would be paying himself exclusively out of his own property, and there would be nothing assumed by the party on the other side." The judge, in our opinion, did not err in adding, in response to a direct question propounded by the foreman of the jury in asking for instructions, that the lack of mutuality would be confined to the property actually transferred, and not the proceeds from other

sources in the furtherance of the business. In other words, the test is: Was there liability for the amount specified in the contract? According to Creamer's testimony, he was bound in any event to pay $2,400. He agreed for Murphey to sell, for $1,465, a certain portion of the assets, some of which he distinctly testified were of no use to him in the business; and, while there is no direct evidence that he would not have been able to procure from some outside source, by pledging his assets, and by borrowing on personal security, or otherwise, the remainder due upon the purchase-price of $2,400, still, granting for the sake of the argument that the remainder of the purchase-price was to be paid by the close of the next season, from the profits of the business, the sale is not for that reason void for want of mutuality. Conceding that the fact that there will be profits is uncertain, still if the purchase-price is not paid when the limit fixed for payment has arrived, the purchaser becomes liable for the unpaid purchase-price, and judgment can be recovered against him. The mere stipulation that the payment is to be made from profits would not of itself necessarily evidence that the purchase-price would not be paid, or even that it would not be paid from the profits, nor would it necessarily evidence that payment from the profits of the property sold would be only payment to the seller of his own. A sale may be perfectly valid and yet contemplate that the payments are to be made exclusively from profits in the articles sold, where it is understood and agreed that the services and skill of the purchaser are necessary to carry on a going business. According to the testimony of Creamer, the profits of the successor's business and the consequent payments were dependent not only upon his business judgment and efficient management, but were made possible by his actual physical participation in the labor necessary to carry on the wood and coal business. The jury had the right to take this view of the matter. A case could be imagined where a salesman whose services were actually worth a large monthly salary might take a small stock of merchandise, and, with sufficient financial support, and by furnishing his services at much less than their market value, earn such profits in the business as would more than pay the purchase-price of the original stock of goods with the difference between the actual monetary value of his service in drawing trade and making profitable sales and the much smaller amount actually drawn out by himself for

living expenses. In such a case it could not be said, if the purchaser built up the business and paid the former owner all he contracted to pay that he should pay him more, or that the business still belonged to the former owner because the stipulated purchase-price had been paid from profits on a stock of goods which was, at the time of the contract, his exclusive property. In our opinion, the purchase-price may be paid out of the proceeds of a resale of specific property, even though the property be realty; and a valid contract of sale may be made and pass title, when the three following essential ingredients are shown : (*a*) intention to pass title; (*b*) delivery in pursuance to the agreement; (*c*) the undertaking of the vendee to bestow his time and skill in making advantageous sales, such as making retail sales of goods bought by him in bulk, in case personal property is the subject-matter of the contract, or the making of advantageous sales by proper advertisement, settlement, promotion, and subdivision, in case of a contract for the sale of land.

6. Under the evidence in this case one of the issues was whether Murphey's motive in having Creamer arrested under the warrant for trespass was to have him punished for a violation of the law, or whether it was his object, by means of the criminal prosecution, to compel Creamer to surrender to him the property in dispute. This issue was to be determined by the jury, and the excerpt from the judge's charge upon the subject of malicious abuse and malicious use of legal process was not prejudicial to the plaintiff in error. Even if the judge did not distinctly classify the pending action, he properly distinguished the malicious abuse of legal process from malicious use of legal process, in the identical language employed by Chief Justice Simmons in *Porter* v. *Johnson,* 96 *Ga.* 146-7 (23 S. E. 123). Otherwise than as pointed out in the opinion in that case, an action for malicious use of legal process seems to differ from one for malicious abuse of like process mainly in the fact that where a malicious use of legal process is alleged, it must also be alleged that the suit upon which the action is based has terminated, while in the case of malicious abuse of legal process an averment to that effect is unnecessary. *Mullins* v. *Matthews,* 122 *Ga.* 286 (50 S. E. 101) ; *King* v. *Yarbray,* 136 *Ga.* 212 (71 S. E. 131). Even if there was a misjoinder, the overruling of the demurrer presenting that objection not being excepted to, the judgment upon that point became the law of the case ; and for this reason, though the allega-

tions of the plaintiff's petition should set forth a case of malicious use of legal process, as well as declare upon a malicious abuse of legal process, the actions could be properly joined.

7.  Without entering upon a discussion of the remaining grounds of the motion for a new trial (each of which we have carefully weighed), it suffices to say that none of the errors assigned would authorize the grant of a new trial.  It is plain that the modification or qualification of the judge's instruction (as to the necessity that the alleged contract of sale should fix a definite time for payment), to the effect that where no definite time is fixed payment shall be made in a reasonable time, was not error.  An abundance of authorities sustain the proposition that it is not essential that a definite day of payment shall be fixed by the contract; and where payment is to be made within a specific period of time, it is only necessary that payment shall be actually made before the expiration of that period; and such a stipulation does not invalidate the contract of purchase.  The jury appears to have taken a view of the evidence which fully authorized their finding, though an inference directly to the contrary was authorized.  The charge of the court fully presented the contentions of the parties, and, upon the controlling principles of law involved, was as fair to the plaintiff in error as he had any right to expect.  The major portion of the instructions requested were fully covered by the general charge; and where the instruction embodied in the request was wholly refused, it is apparent that the refusal was properly based upon the fact that the request, while embodying a correct principle of law, was not applicable to the evidence adduced upon the trial.  The assignment of error which complains of the judge's refusal to instruct the jury, as requested, that the rights of McKendree & Company, and their assigns, under Parks's written lease, would prevail over Parks's rental to Creamer, affords an example typifying more than one of these assignments of error.  The request in that instance would not have been authorized by the evidence.  It was undisputed that the lease had not been assigned to Murphey at the time that the present cause of action arose.  It may also be said, as to the qualification placed by the presiding judge upon the instructions requested, that they appear to be authorized in every instance.

*Judgment affirmed.  Pottle, J., not presiding.*